**STATE of Missouri, Respondent,**

v.

**Lamont ROWAN, Appellant.**

**No. ED 84449.**

Missouri Court of Appeals,
Eastern District.

June 28, 2005.

Craig Allan Johnston, Columbia, MO, for appellant.

Deborah Daniels, Jefferson City, MO, for respondent.

Before GARY M. GAERTNER, SR., P.J., SHERRI B. SULLIVAN, J., BOOKER T. SHAW, J.

BOOKER T. SHAW, Judge.

Lamont Rowan ("Defendant") appeals from the trial court's judgment sentencing him to life imprisonment after a jury convicted him of second-degree felony murder, Section 565.021.1, RSMo 2000.[1] In his sole point on appeal, Defendant argues the trial court erred when it sentenced him to life imprisonment, as opposed to a term of years, on the mistaken assumption that a life sentence gave Defendant a better opportunity to obtain an early release. We reverse and remand for re-sentencing only.

Defendant was convicted after a jury trial of one count of second-degree felony murder, Section 565.021.1. Because Defendant does not challenge the sufficiency of the evidence to support his conviction, we need not recite the facts from the underlying case. In his only point on appeal, Defendant challenges the trial court's comments at the sentencing hearing. At the hearing, the State requested that Defendant be sentenced to a term of life imprisonment. Alternatively, defense counsel requested Defendant to be sentenced a ten year term of imprisonment.[2] The trial court's responses to these recommendations were as follows:

THE COURT: The jury has given you probably all the mercy the justice system has available for you. They have given you the opportunity for parole. They made a decision that you shouldn't die in prison unless you choose to die in prison. So the board of probation and parole will be watching you. They will see how you handle yourself in prison. You will have the opportunity to cut this sentence to the level that [defense counsel] would otherwise have argued for you. That's going to be essentially left up to you. It's going to be in your hands. If you are truly sorry, this truly was an accident, if you are a good person, as the good pastor came in and put his recommendation on the line and argued for you, then it will show and you

---

1. All statutory references will be to RSMo 2000 unless otherwise indicated.

2. The statutory range of punishment for this offense appears nowhere in the record during the sentencing hearing.

will get that first eligibility date and you will get out. If you are as to what [the State] had suggested and if you are as the horrible facts in this case suggest, it will show, and none of us will ever see you again. That will be up to you. Anything else with respect to what's up to me?

[DEFENSE COUNSEL]: Your Honor, I would remind the Court I believe Murder 2nd would be 85 percent whatever [the] Court imposes, so I would remind the Court of that, just if I could.

THE COURT: *But it' s life, so there is no 85 percent of life.* They have a certain period of time that they start looking at it and that's what they do. Now, if it was a determined number of years, *like if I laid out 50, 60 years,* then I could make sure that he would be gone for a very long period of time. To me, that would be harder on him than doing life. I can give a number of years, but *I could make sure he dies in prison because of the 85 percent rule.* But [the State] is not arguing for that in this case. *So by giving him a life sentence, we' re actually giving him a better shot at early release than if we had him down an extended number of years.*

(Emphasis added). The trial court proceeded to sentence Defendant to a term of life imprisonment. Defendant appeals.

 In his sole point on appeal, Defendant argues the trial court erred when it sentenced him to a term of life imprisonment, as opposed to a sentence for a term of years, upon the mistaken assumption that a life sentence would provide Defendant with a better opportunity for an early release. Specifically, Defendant argues that after calculating the minimum term he would have to serve in order to be eligible for parole with a life sentence, the trial court's belief that he would be eligible for early release was erroneous, and there-

fore, this case should be remanded for resentencing. We agree.

 Defendant concedes he has failed to preserve this issue for appellate review because he did not raise any objection at the time of sentencing. As such, review by this Court is for plain error only pursuant to Rule 30.20. "Plain error exists where the alleged error facially establishes substantial grounds for believing a manifest injustice or miscarriage of justice occurred." *State v. Goff,* 129 S.W.3d 857, 862 (Mo. banc 2004). (citations omitted). Courts on appeal have reviewed similar sentencing issues for plain error, and in some instances, granted relief. *See State v. Olney,* 954 S.W.2d 698 (Mo.App. W.D. 1997); *State v. Taylor,* 67 S.W.3d 713 (Mo. App. S.D.2002).

Section 558.019.3 provides that "any offender who has pleaded guilty to or has been found guilty of a dangerous felony as defined in Section 556.061 . . . and is committed to the department of corrections shall be required to serve a minimum prison term of eighty-five percent of the sentence imposed by the court or until the offender attains seventy years of age, and has served at least forty percent of the sentence imposed, whichever occurs first." Section 556.061(8) defines "dangerous felony," and this includes murder in the second degree. The range of punishment for a person convicted of murder in the second degree as a Class A felony is "a term of years not less than ten years and not to exceed thirty years, or life imprisonment." Section 558.011.1. Further, Section 558.019.4(1) provides "[a] sentence of life shall be calculated to be thirty years."

The State concedes the trial court was mistaken when it said Defendant would become eligible for parole earlier under a life sentence than under a sentence for any term of years. Eighty-five percent of thirty years imprisonment would result in De-

fendant being required to serve 25.5 years at a minimum before becoming eligible for parole. This would be more time than if the trial court had chosen to sentence Defendant to a term of less than thirty years, which was permissible under the statute.

However, the State argues this mistake did not rise to the level of plain error because it did not produce a manifest injustice or miscarriage of justice. Specifically, the State alleges the trial court had no obligation to inform Defendant about parole eligibility, which is a collateral matter. Further, the State reasons the error was not evident, obvious, or clear on the record. Moreover, the State argues the trial court had a proper understanding with respect to the range of punishment, but merely misunderstood the consequences of the sentence imposed, and therefore, Defendant suffered no prejudice as a result of the sentence. We disagree.

Although we have not found a case directly on point, several Rule 24.035 post-conviction relief cases have addressed this issue, particularly where trial counsel and/or the trial court has affirmatively misinformed the movant about parole eligibility at sentencing. We find these cases persuasive because "how guilt [is] arrived at is not a question here. The question here is [what occurred at] sentencing." *Roller v. State,* 84 S.W.3d 525, 529 (Mo. App. S.D.2002).

We agree with the State's initial contention that the trial court has no obligation to inform a defendant of the collateral consequences of pleading guilty. *Reynolds v. State,* 994 S.W.2d 944, 946 (Mo. banc 1999); *Barmore v. State,* 117 S.W.3d 113, 116 (Mo.App. E.D.2002); *White v. State,* 957 S.W.2d 805, 807 (Mo. App. W.D.1997). Information regarding parole eligibility is considered a collateral consequence. *Fogle v. State,* 124 S.W.3d 509, 511 (Mo.App. S.D.2004). Thus, nei-

ther the trial court nor trial counsel were obligated to inform Defendant about his parole eligibility. *Hao v. State,* 67 S.W.3d 661, 663 (Mo.App. E.D.2002).

This is not a case, however, where a defendant alleges the trial court failed to inform him about his parole eligibility. Here, Defendant is alleging the trial court *affirmatively misinformed* him that he would have a better opportunity for parole if he were given a life sentence as opposed to a sentence for a term of years. This Court has recognized a distinction between circumstances where a defendant is advised erroneously about parole eligibility and a failure to advise at all. *See Hao,* 67 S.W.3d at 663; *Reynolds,* 994 S.W.2d at 946 (recognizing "there is authority for the proposition that misinforming as opposed to failing to inform a defendant about eligibility for parole may undermine the voluntariness of the plea"). "The distinction between direct and collateral consequences is unimportant and a different rule applies where counsel misinforms his [or her] client regarding a particular consequence." *Beal v. State,* 51 S.W.3d 109, 112 (Mo.App. W.D.2001); *See also Hao,* 67 S.W.3d at 663; *Copas v. State,* 15 S.W.3d 49, 56 (Mo.App. W.D.2000). Logic dictates that we conduct a similar analysis when the sentencing court misinforms a defendant about his or her parole eligibility.

It is evident from the record that the trial court was mistaken about how much time Defendant would have to serve before being eligible for parole after receiving a life sentence. When defense counsel attempted to interject that he believed Defendant would have to serve 85% of his sentence, the trial court disagreed, stating "[T]here is no 85 percent of life." In addition, the trial court indicated it could sentence Defendant to "50, 60 years,"

which is also not permissible under the range of punishment.

Further, the State's argument that Defendant has suffered no prejudice because the trial court understood the range of punishment, but merely misunderstood the consequences of the sentence imposed, must fail. It is evident from the trial court's comments that it did not, in fact, understand the range of punishment. Specifically, the court stated it could give Defendant a greater sentence than allowed by statute when it indicated it could sentence him to "50, 60 years" and that it "could make sure he dies in prison because of the 85 percent rule." The trial court also expressed a desire to grant Defendant leniency given the circumstances of the crime and its desire to give him the best opportunity for parole. However, the trial court's mistaken belief about Defendant's parole eligibility resulted in the imposition of the maximum sentence permissible under the statute.

Moreover, it is of no avail that the trial court may choose to impose the same sentence upon remand. "A sentence passed on the basis of a materially false foundation lacks due process of law and entitled the defendant to a reconsideration of the question of punishment in light of the true facts, regardless of the eventual outcome." *Wraggs v. State*, 549 S.W.2d 881, 884 (Mo.1977). *See also Olney*, 954 S.W.2d at 700 (remanding for re-sentencing and rejecting State's argument that trial court would impose same sentence despite mistaken belief that sentences must run concurrently) and *Roller*, 84 S.W.3d at 529 (same). "We cannot say that the judge might not have pronounced a less severe sentence if he thought he had discretion to do so." *Roller*, 84 S.W.3d at 528.

The judgment of the trial court is reversed and the case is remanded for re-sentencing.

REVERSED AND REMANDED.

GARY M. GAERTNER, SR., P.J., and SHERRI B. SULLIVAN, J., Concur.