**Leon W. PETTIS, JR., Appellant,**

v.

**STATE of Missouri, Respondent.**

No. WD 65972.

Missouri Court of Appeals,
Western District.

Jan. 30, 2007.

Margaret Mueller Johnston, Columbia, for appellant.

Shaun J. Mackelprang, Asst. Atty. Gen., Jefferson City, for respondent.

Before JOSEPH M. ELLIS, Presiding Judge, ROBERT G. ULRICH, Judge and RONALD R. HOLLIGER.

JOSEPH M. ELLIS, Judge.

Leon Pettis appeals from the denial of his Rule 24.035 motion for post-conviction relief following an evidentiary hearing.

For the following reasons, we reverse the motion court's decision.

Appellant was charged as a prior and persistent offender with possession of a controlled substance (heroin) with the intent to distribute, § 195.211, or, in the alternative, with possession of a controlled substance within a correctional institution, § 217.360. Pursuant to a plea agreement reached with the State, Appellant appeared before the Circuit Court of Randolph County and entered a plea of guilty to one count of possession of a controlled substance within a correctional institution. In exchange for his plea of guilty, the State agreed to recommend that Appellant's sentence be limited to a term of five years in the Missouri Department of Corrections. Counsel agreed to leave it up to the court whether Appellant should be sentenced concurrently or consecutively to the life sentence he was already serving as a result of a 1980 conviction for one count of first-degree murder.

The court questioned Appellant about his desire to plead guilty and the rights that he would be waiving thereby. Prior to the plea being accepted, the prosecutor stated that, because the State was satisfied with the term of years involved in the plea, he would not be offering any evidence of Appellant's prior convictions to enhance his sentence as a prior and persistent offender. Thereafter, the plea court found that Appellant's plea was entered freely and voluntarily, and the court accepted Appellant's plea. Then, during discussions regarding sentencing, the following colloquy occurred:

The State: The State usually recommends for first time offenders at least a two to three-year sentence when its marijuana. In this case we're not talking about marijuana. We're talking about what may out on the street side not be much heroin, but inside the De-

partment of Corrections be a substantial quantity of heroin product. And for that reason the State is recommending that the five-year period be consecutive. We think there is no deterrent value to offering concurrent time.

The Court: Does he have an out date anyway or not?

The State: I'm not sure. I looked at his—the information that was in his packet. And it's got nines across the line, so I assume that means he doesn't have an out date. But I think it does have some impact on him when the Court orders the time to be consecutive.

The Court: All right. Mr. Ward?

Defense Counsel: Your Honor, he had—had a release date of this September. He is serving a life sentence, but he had a release date of this September. That's been canceled. Probation hearing was set—is set for this June. He's been incarcerated since 1983. . . . This is his first—his first violation for having possession of any controlled substance. He has been a—you know, he's—he realizes that he made a mistake, but adding five years on top of—I mean who knows when they're going to push his minimum release date till because of this. It's— The punishment for this case would be excessive as consecutive.

The Court: Well, the Prosecutor makes a pretty good point, though, when he says that if you give him concurrent time you've essentially done nothing. I mean, in essence, you haven't done anything. I mean—

The State: And the inmates take notes of everything the court does in these cases.

The Court: We can quibble—We can quibble about, I guess, whether it ought to be five years, but I don't—I know it's pretty hard to say that we've done anything if we give a guy concurrent time. Sir, is—

Defense Counsel: Well, clearly he's not going to—you know, his release date is going to be pushed backward regardless.

Ultimately, the plea court sentenced Appellant to a term of four years in the Missouri Department of Corrections, which was to run consecutively to his life sentence.

Subsequently, Appellant filed a timely motion for post-conviction relief under Rule 24.035. An amended motion was later filed by appointed counsel. In his post-conviction motion, Appellant asserted that he received ineffective assistance of counsel because counsel failed to investigate the impact a consecutive sentence would have upon his parole eligibility and to inform him that it would make him ineligible to ever receive parole on his life sentence. Appellant claimed that he would not have agreed to plead guilty if he had known he could become ineligible to ever receive parole under the terms of the plea agreement. Appellant also claimed that counsel was ineffective for failing to inform the plea court that a consecutive sentence would result in Appellant becoming ineligible to ever be released on parole and for misleading the court into believing that his release on parole would only be delayed as a result of such a sentence.

Following an evidentiary hearing, the motion court issued its findings of fact and conclusions of law denying Appellant's motion. Appellant brings two points on appeal.

Our review of the motion court's decision on a Rule 24.035 motion is limited to determining whether its findings of fact and conclusions of law are clearly erroneous. *Rollins v. State*, 974 S.W.2d 593, 595 (Mo.App. W.D.1998). "The motion court's findings and conclusions are clearly erroneous only if a review of the entire record by the appellate court results in a definite and firm impression that a mistake has

been made." *Copas v. State,* 15 S.W.3d 49, 53 (Mo.App. W.D.2000).

■ "To obtain relief on a claim of ineffective assistance of counsel, Appellant must establish: (1) that counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney, and (2) that he was thereby prejudiced." *Weston v. State,* 2 S.W.3d 111, 114 (Mo.App. W.D.1999) (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). A defendant entering a guilty plea waives all claims of error except those affecting the voluntariness of the plea or the understanding with which the plea was made. *Rollins,* 974 S.W.2d at 595 (quoting *White v. State,* 957 S.W.2d 805, 807 (Mo. App. W.D.1997)). Thus, "[i]n order to satisfy the 'prejudice' requirement, a defendant challenging a guilty plea based on ineffective assistance of counsel must allege facts showing 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Weston,* 2 S.W.3d at 114 (quoting *Coates v. State,* 939 S.W.2d 912, 914 (Mo. banc 1997)).

In his first point, Appellant contends that the motion court clearly erred in denying his post-conviction motion because the record established that "he reasonably relied on his attorney's affirmative misrepresentation that any sentence in his case would merely 'push back' his parole date when, in fact, the consecutive sentence imposed made him ineligible for parole for the rest of his life." In Point II, Appellant asserts that the motion court clearly erred in denying his post-conviction claim that plea counsel had an obligation to inform the sentencing court that a consecutive sentence would make Appellant ineligible for parole. Appellant claims he was prejudiced because the court sentenced him to a consecutive sentence under the mistaken belief that it would merely "push back" the release date, when in fact, it made Appellant ineligible for release.

The record reflects that Appellant had been scheduled to be released on parole on September 22, 2004, but that his release date had been cancelled as a result of the charges filed against him for possession of heroin. He was notified that he was scheduled for another parole hearing on June 8, 2004. Following his plea and sentencing on the possession charge, however, Appellant received notice from the Board of Probation and Parole informing him that his parole hearing had been cancelled and that he was no longer eligible to ever be released on parole based upon Section 15, Subsection F of the Board of Probation and Parole Rules and Regulations, which states:

Certain offenders who receive consecutive sentences to a parolable life sentence and the consecutive sentences are for crimes which have occurred after August 28, 1994, shall not be eligible for parole.

Appellant contends that plea counsel should have investigated the effect that his plea might have on his parole eligibility and informed him that he would never be eligible for parole if he received a consecutive sentence and, further, that counsel should have informed the court of such fact rather than misleading the court to believe that his parole date would merely be pushed back.

■ While plea counsel is required to inform a criminal defendant of all direct consequences of a guilty plea, "counsel is not required to inform a defendant of collateral consequences." *Fogle v. State,* 124 S.W.3d 509, 511 (Mo.App. S.D.2004). "A 'collateral consequence' of a guilty plea is one which does not definitely, immediately, and largely automatically follow the entry of a plea of guilty." *Sadler v. State,* 965

S.W.2d 389, 391 (Mo.App. E.D.1998). "Generally, information about parole is a collateral consequence that neither trial counsel nor the court must inform the defendant of in order for a guilty plea to be voluntary and intelligent." *Haskett v. State*, 152 S.W.3d 906, 910 (Mo.App. W.D. 2005).

■ However, "Missouri law makes a distinction between a defendant not being informed about possible parole and being affirmatively misinformed about possible parole." *Haskett v. State*, 152 S.W.3d 906, 910 (Mo.App. W.D.2005). " '[T]he distinction between direct and collateral consequences is unimportant and a different rule applies where counsel misinforms his client regarding a particular consequence.' " *Savage v. State*, 114 S.W.3d 455, 458 (Mo.App. E.D.2003) (quoting *Beal v. State*, 51 S.W.3d 109, 112 (Mo.App. W.D. 2001)). "Where plea counsel affirmatively misinforms his client about a consequence of pleading guilty and the client relies upon the misrepresentation in deciding to enter his plea, counsel's incorrect advice may rise to the level of constitutionally ineffective assistance of counsel." *Id.*

■ In this case, Appellant admits that counsel did not discuss any issues related to parole with him prior to the plea hearing. And the record reflects that counsel made no representations during the sentencing hearing regarding Appellant's parole being "pushed back" until after the court had accepted Appellant's plea of guilty. Accordingly, the record conclusively demonstrates that counsel did not affirmatively misinform Appellant about a consequence of entering a plea of guilty prior to Appellant's entry of that plea, and therefore, to the extent Appellant claims that counsel's conduct rendered his plea involuntary, it must be rejected.

■ But Appellant's Rule 24.035 motion and his points on appeal are directed in part to the sentencing hearing itself. "A claim that counsel was ineffective during sentencing … is cognizable under Rule 24.035." *Sutton v. State*, 966 S.W.2d 337, 340 (Mo.App. S.D.1998). "In order to prevail when attacking the competency of counsel following entry of a guilty plea, a movant must show that counsel's errors were so serious that his representation fell below an objective standard of reasonableness and that these errors affected the outcome of the plea process." *Edwards v. State*, 794 S.W.2d 249, 250 (Mo.App. W.D. 1990).

■ During the sentencing hearing, counsel did not stand silent on the question of parole. Rather, counsel affirmatively stated that Appellant's "release date is going to be pushed backward…." At another point, counsel said "who knows when they're going to push [Appellant's] minimum release date till because of this." And this information was clearly important to the court because it had earlier asked, "Does he have an out date anyway or not?" Counsel clearly was ignorant of the Board of Probation and Parole's rule that, upon imposition of a consecutive term of imprisonment, Appellant's parole-eligible life sentence would definitely, immediately, and automatically convert to a sentence of life without possibility of parole. By stating that Appellant's release date would be "pushed back," counsel was affirmatively misrepresenting to Appellant and the court that a consecutive sentence would not result in Appellant's prior sentence being transformed into life without possibility of parole. By any objective measure, a reasonably competent attorney would not make such a representation when he or she had no knowledge of the consequences.

■ The prejudice is obvious. Based on the colloquy from the sentencing hearing recounted *supra*, it is apparent that none of the participants in the hearing was

aware of the real effect a consecutive sentence would have on Appellant's parole eligibility. Thus, the court sentenced Appellant while under the mistaken belief that Appellant's parole eligibility would be pushed back as represented to it by Appellant's counsel, with no inkling that it would be entirely extinguished by a consecutive sentence. The court was obviously taking Appellant's parole eligibility into consideration in making a sentencing decision because it specifically asked about it. This is important because the record makes it clear that the court wanted to show Appellant some lenience and, in fact, did so by imposing only a four-year sentence, as opposed to the five years permitted under the plea agreement and requested by the state.

This case is not unlike *Williams v. State,* 800 S.W.2d 739 (Mo. banc 1990). In *Williams,* the defendant pleaded guilty to two counts of rape and two counts of forcible sodomy. *Id.* at 739. The trial court sentenced the defendant to four consecutive ten-year sentences based on the mistaken impression that the minimum sentence for each offense was ten years and that the sentences for those offenses must be run consecutively. *Id.* at 740–41. Thereafter, Williams filed a Rule 24.035 motion asserting that the trial court misconstrued the applicable statute. *Id.* at 740. The trial court denied the relief sought, and Williams appealed. *Id.* The Missouri Supreme Court found that the trial judge incorrectly believed that "he had pronounced the minimum sentence. We cannot say that the judge might not have pronounced a less severe sentence if he thought he had discretion to do so. The appropriate remedy is to remand for resentencing." *Id.* at 741.

Also similar is *State v. Rowan,* 165 S.W.3d 552 (Mo.App. E.D.2005) ("*Rowan I*"). In that case, the trial court mistakenly believed that "Defendant would become eligible for parole earlier under a life sentence than under a sentence for any term of years." *Id.* at 554. "[T]he trial court's mistaken belief about Defendant's parole eligibility resulted in the imposition of the maximum sentence permissible under the statute." *Id.* at 556. On appeal, the Eastern District of this Court reversed and remanded for re-sentencing. *Id.* In doing so, the court noted that the trial judge had "expressed a desire to grant Defendant leniency ... and to give him the best opportunity for parole." *Id.*

Interestingly, the same case was appealed again after Rowan was re-sentenced. *State v. Rowan,* 201 S.W.3d 82 (Mo.App. E.D.2006) ("*Rowan II*"). In that appeal, the defendant argued that the trial court erred by refusing to consider evidence of his good behavior in prison subsequent to the original sentencing. *Id.* at 83. The Eastern District held that the trial court was "permitted to consider Rowan's post-sentencing behavior in its resentencing decision," and that Rowan was prejudiced by the trial court's error. *Id.* at 84. Accordingly, the judgment was reversed, and the case was once again remanded for re-sentencing. *Id.*

■ In *Rowan I, Rowan II,* and *Williams,* it did not matter that the trial court might choose to impose the same sentence upon remand. "A sentence passed on the basis of a materially false foundation lacks due process of law and entitle[s] the defendant to a reconsideration of the question of punishment in light of the true facts, regardless of the eventual outcome." *Rowan I,* 165 S.W.3d at 556 (quoting *Wraggs v. State,* 549 S.W.2d 881, 884 (Mo.1977)).

In the instant appeal, the record reflects that the sentencing judge was no less mistaken than the trial judges in *Williams,* and *Rowan I* and *Rowan II.* Here, the trial judge clearly wanted his sentence to

have some deterrent effect, but yet wanted to grant the defendant some lenience. He was concerned about and trying to take into consideration the issue of parole eligibility on Appellant's current sentence. He was under the impression that Appellant's release date merely would be "pushed back" if he imposed a sentence consecutive to the one Appellant was already serving, when in fact it definitely, immediately, and automatically transformed the parole-eligible life sentence that Appellant had been serving since 1980 into a life sentence without possibility of parole. "This change placed 'appellant in a significantly different position than what he was' at sentencing." *Rowan II*, 201 S.W.3d at 84 (quoting *Wraggs v. State*, 549 S.W.2d 881, 886 (Mo. 1977)). "[I]t is not for us to say that this change would not affect the trial court's decision on sentencing." *Id.*

For the foregoing reasons, the judgment of the trial court denying post-conviction relief is reversed. The sentence, but not the conviction, is vacated. The case is remanded with directions to re-sentence Appellant on his plea of guilty.

All concur.