**Remigio CHERCO, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 70071.**

Missouri Court of Appeals,
Western District.

Feb. 9, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 30, 2010.

Application for Transfer Denied
May 25, 2010.

Elizabeth U. Carlyle, Columbus, MS, for appellant.

Shaun J. Mackelprang, Jefferson City, MO, for respondent.

Before Division Four: THOMAS H. NEWTON, Chief Judge, LISA WHITE HARDWICK, Judge and CYNTHIA L. MARTIN, Judge.

## CYNTHIA L. MARTIN, Judge.

Remigio Cherco appeals the motion court's denial of his Rule 24.035 motion for post-conviction relief following an evidentiary hearing. Cherco contends that the motion court erred in: (1) denying his motion on the grounds that his guilty pleas were not knowingly and voluntarily entered; and (2) denying his motion on the grounds that he received ineffective assistance of counsel at the sentencing proceeding. For the following reasons we affirm the motion court's decision.

### Factual and Procedural History

Remigio Cherco was charged by the State with several violent crimes in two separate cases. In the State's first case initiated in October 2005 ("First Case"), Cherco was charged with domestic assault in the second degree, a class C felony.[1] In the State's second case initiated in May 2006 ("Second Case"), Cherco was charged with one count of domestic assault in the first degree, a class A felony, one count of domestic assault in the second degree as a persistent domestic violence offender, a class C felony, and one count of felonious restraint, a class C felony. Although separate cases, the trial court joined the First Case and the Second Case for purposes of plea negotiations, plea hearings, and sentencing.

Pursuant to plea negotiations between Cherco and the State, the State dismissed the two class C felonies charged in the Second Case and reduced the class A felony to a class B felony in the Second Case, in exchange for Cherco's guilty plea to the class C felony in the First Case and the reduced class B felony in the Second Case. As part of the plea agreement, the State recommended a seven year sentence for each of the felony domestic assault counts and recommended that the sentences run concurrently. Cherco pleaded guilty pursuant to the plea agreement.

---

1. The legal file submitted by Cherco suggests the First Case was initiated in November 2006. This is not correct. As reflected in the supplemental legal file submitted by the State, the First Case was initiated in October 2005 and was assigned case number 7CR105004779. The docket sheet for that case number reflects that on November 16, 2006, Cherco appeared, waived preliminary hearing, and was directed to appear in a different division on November 22, 2006. For reasons not explained by the record, the case number for the First Case was then changed to case number 7CR105004779–01. The docket sheet for this case number shows as its first entry Cherco's November 22, 2006 appearance, as had been ordered on November 16, 2006. Though there are two assigned case numbers and thus two docket sheets, they both relate to the First Case.

At a subsequent sentencing hearing, the trial court did not accept the State's sentencing recommendation and sentenced Cherco to three years in the First Case and eleven years in the Second Case, to be served consecutively. Cherco filed a Rule 24.035 post-conviction relief motion. After an evidentiary hearing, the motion court [2] denied Cherco's Rule 24.035 motion. Cherco appeals.

## Standard of Review

Appellate review of a motion court's disposition of a motion filed under Rule 24.035 shall be limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous. Rule 24.035(k); *Krider v. State*, 44 S.W.3d 850, 856 (Mo.App. W.D.2001). The trial court's "findings and conclusions are clearly erroneous only if, after reviewing the entire record," we are left with a "definite and firm impression that a mistake has been made." *Id.*

## Point One—Guilty Plea Phase

■ In Cherco's first point on appeal, he claims that the motion court clearly erred in denying his Rule 24.035 motion for post-conviction relief because his guilty pleas were involuntary and unknowingly entered due to his counsel's ineffective assistance. Cherco alleges that: (1) he did not know that the plea agreement was not binding on the trial judge; (2) he did not know that the trial judge alone makes the determination of whether his sentence would run concurrently or consecutively; and (3) his trial counsel incorrectly advised him regarding the percentage of his sentence that he would be required to serve before being eligible for parole. Cherco claims that had he been correctly advised on the above matters then he would not have pleaded guilty and would have instead insisted on going to trial.[3]

■ A guilty plea must be a "voluntary expression of the defendant's choice, and a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences." *State v. Roll*, 942 S.W.2d 370, 375 (Mo. banc 1997). To prevail on an ineffective assistance of counsel claim following a guilty plea, Cherco must show by a preponderance of the evidence that: (1) trial counsel's performance was deficient because he failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances; and (2) the deficient performance prejudiced Cherco as a result. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Simmons*, 955 S.W.2d 729, 746 (Mo. banc 1997). If either the performance prong or the prejudice prong is not met, then we need not consider the other, and Cherco's claim of ineffective assistance of counsel must fail. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

To satisfy the performance prong, Cherco must overcome the presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance of counsel and made all significant decisions in the exercise of professional judgment. *Id.* at 689–90, 104 S.Ct. 2052. In order to overcome the prejudice prong, Cherco must show a rea-

---

**2.** The motion court judge and the trial court judge were the same, but are separately referenced to avoid confusion.

**3.** Cherco does not clearly and succinctly allege ineffective assistance of counsel in point one. Rule 84.04(d)(2)(B). However, it is clear from the argument portion of the brief that Cherco blames his lack of understanding on his reliance on counsel. We will therefore treat point one as a claim of ineffective assistance of counsel under Rule 24.035.

sonable probability that, but for counsel's alleged deficiencies, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052.

■ Cherco first alleges he did not understand that: (1) the recommended sentence was not binding on the trial judge; or (2) the trial judge alone decides if sentences will run concurrently or consecutively, and that, as a result, his guilty pleas were not voluntary. Cherco must show that his mistaken understanding was reasonable. *McFarland v. State,* 796 S.W.2d 674, 676 (Mo.App. W.D.1990). "While an individual may proclaim he had a certain belief and may subjectively believe it, if it was unreasonable for him to entertain such a belief at the time of the plea proceeding, relief should not be granted." *Krider,* 44 S.W.3d at 857. Thus, we look to Cherco's claimed beliefs in light of the guilty plea record, and if there is no reasonable basis for the beliefs, then relief should be denied. *Id.*

After reviewing the guilty plea record and evidence presented at the post-conviction hearing, the motion court made the determination that there was no reasonable basis for Cherco's claims that he did not understand the recommended sentence was not binding on the trial judge or that his sentences could run consecutively. The guilty plea record clearly reflects that Cherco was questioned concerning his understanding of the proceedings. At that time, Cherco was asked whether he had enough time with trial counsel to be able to fully understand the two felony charges that he was pleading guilty to, and he responded that he did have enough time and he understood the nature of his pleas. In addition the trial judge asked Cherco:

Q: When a plea of guilty's [sic] accepted, a judge makes sentencing decisions. Is that clear?

A: Yes, sir, Your Honor.

. . . .

Q: And one of the obligations a judge in a guilty plea proceeding has is to make clear to a defendant pleading guilty the maximum punishment that can be imposed under the law if the plea of guilty is accepted. To get that we have to add together the maximums. You are exposed to as much as 22 years incarceration and $5,000 in fines. Have I now made clear to you the range of punishment in these cases?

A: You have, Your Honor.

. . . .

Q: In the plea agreement, agreements have been made about concurrent, consecutive, length of sentence and all that. Did your reading of the petition to plead guilty make it clear to you that the prosecutor's position on such things is not binding on me?

A: No, sir, Your Honor—oh, yes, Your Honor.

Q: Okay. I believe what you have just said to me is that you understand that the Prosecutor's position, while it will be a significant factor for me to consider, it is not one that I must follow. Have I got that right?

A: Yes, sir.

The trial court specifically cited to the Petition to Enter Plea of Guilty signed by Cherco, which stated:

9. After discussions with my lawyer, the prosecuting attorney has promised that if I plead guilty the Prosecutor's Office will comply with the plea agreement. . . . *However, I understand that the Court is not required to follow recommendations made by the Prosecutor. . . .It has been made clear to me that in Clay County plea agreements are not binding to the*

***Court.*** This means I will not be able to withdraw my plea of guilty and have a trial if the Judge does not follow the Prosecutor's recommendation(s).... I know that the length of my sentence ... [is] solely within the control of the Judge. I hope to receive leniency, but I am prepared to accept any punishment permitted by law which the Court sees fit to impose. I know there are no promises or guarantees ... of what the sentence will be in this case, or whether the sentence will be consecutive to or concurrent with any other sentences.[4]

(Emphasis added.) The trial court also questioned Cherco on whether or not he had read everything in the petition and understood it, to which Cherco replied that he had.

In addition, the trial court questioned Cherco on his understanding of his fundamental right to a jury trial, reiterated that the trial court alone makes sentencing decisions, asked whether Cherco was under the influence of any medication at the proceeding, and if Cherco was satisfied with trial counsel's performance. At no point did Cherco state that he was confused or that he did not understand the proceedings. Nor did he ever indicate that he was dissatisfied with trial counsel's performance. In addition to confirming that he understood the guilty plea proceedings, Cherco also told the trial court under oath, at the close of the proceedings, that every-

thing in his plea was true and that he was pleading guilty freely and voluntarily. We conclude that the motion court's findings as to the voluntariness of Cherco's plea were not clearly erroneous as there was no reasonable basis for Cherco's claim that he did not understand that the recommended sentence was not binding.

 Cherco next alleges that trial counsel misinformed him regarding the percentage of his sentence that he would be required to serve before being eligible for parole, rendering his guilty plea involuntary. "Generally, information about parole is a collateral consequence that neither trial counsel nor the court must inform the defendant of in order for a guilty plea to be voluntary and intelligent." *Haskett v. State*, 152 S.W.3d 906, 910 (Mo.App. W.D.2005). However, Missouri law distinguishes between a defendant not being informed and being affirmatively misinformed about the possibility of parole. *Id.* If a defendant is affirmatively misinformed or misled, then the circumstances may rise to the level of ineffective assistance of counsel. *Id.*

At the post-conviction hearing, trial counsel testified that he informed Cherco that although the class A felony in the Second Case was being reduced to a class B felony, Cherco would still be subject to the eighty-five percent rule.[5] Cherco and his mother offered competing testimony, respectively, that trial counsel advised Cherco that he would have to serve thirty-

---

**4.** Cherco claims that several amendments were made to the guilty plea during the course of the original guilty plea hearing, which rendered his pleas involuntary and unknowing. However, the motion court found at the post-conviction hearing that the amendments made during the guilty plea hearing did not substantively alter the original plea agreement and were merely stylistic changes made in an effort to more clearly express the combined plea agreement for the State and

the trial court. We agree with this conclusion.

**5.** Section 558.019.3, RSMo 2000, states that "any offender that has pleaded guilty to or has been found guilty of a dangerous felony as defined in section 556.061, RSMo 2000, and is committed to the department of corrections shall be required to serve a minimum prison term of eighty-five percent of the sentence imposed by the court."

three percent and forty-three percent of his sentence before being eligible for parole. The motion court denied Cherco's motion, finding that trial counsel's testimony that he had properly informed his client was credible, and Cherco's contrary testimony was not. Because the motion court is in a better position to make decisions on witness credibility, we defer to the motion court's determination of credibility, as well as its findings of facts and conclusions. *Betts v. State*, 876 S.W.2d 802, 805 (Mo. App. W.D.1994).

Cherco asks us to compare his situation to that involved in *Beal v. State*, 51 S.W.3d 109 (Mo.App. W.D.2001). In *Beal*, this court examined whether a defendant was entitled to an evidentiary hearing on his Rule 24.035 motion, following admissions by trial counsel in an affidavit that he had affirmatively misinformed the defendant concerning his eligibility for parole. *Id.* at 112. *Beal* is distinguishable from this case. Cherco was afforded an evidentiary hearing, and trial counsel did not admit misinforming Cherco concerning his eligibility for parole, and in fact testified to the contrary.

We conclude that the motion court's determination that Cherco was not affirmatively misinformed by counsel about the amount of time he would be required to serve before being eligible for parole was not clearly erroneous. Point one is denied.

### Point Two—Sentencing Phase

■ In Cherco's second point on appeal, he alleges that he received ineffective assistance of counsel during the sentencing proceedings because trial counsel failed to call character witnesses on his behalf. Cherco contends trial counsel failed to call his mother, his uncle, a friend of the family, his sister-in-law, a former girlfriend, and a friend of Cherco's cousin as character witnesses during the sentencing hear-

ing. Cherco does not contend that but for counsel's failure to call character witnesses during the sentencing hearing he would not have pleaded guilty. Instead, Cherco contends that had such evidence been presented, there is a reasonable probability that his sentence would have been lower. He seeks, therefore, vacation of his sentence and an opportunity to be resentenced. He is not seeking to withdraw his guilty plea.

A claim of ineffective assistance of counsel at sentencing following a guilty plea is a "cognizable" claim under Rule 24.035. *Griffin v. State*, 937 S.W.2d 400, 401 (Mo. App. E.D.1997). Thus, the two-pronged test from *Strickland* applies equally to claims of ineffective assistance of counsel arising out of a sentencing hearing. 466 U.S. at 687, 104 S.Ct. 2052.

■ In order to satisfy the performance prong, Cherco must demonstrate that trial counsel's failure to call character witnesses at his sentencing hearing fell below an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. 2052. There exists a strong presumption that counsel's conduct was reasonable and effective. The " 'decision not to call a witness is, as a matter of trial strategy, virtually unchallengeable.' " *State v. Gilpin*, 954 S.W.2d 570, 576 (Mo. App. W.D.1997) (quoting *State v. Maddix*, 935 S.W.2d 666, 672 (Mo.App. W.D.1996)). For Cherco "to establish that his trial counsel was ineffective for failure to call a witness, he must show that the decision involved something other than reasonable trial strategy; that the witness could have been located through reasonable investigation; that the witness would have testified; and that the witness' testimony" would have aided in Cherco's defense. *Id.* "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or ac-

tions." *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052.

At Cherco's Rule 24.035 post-conviction hearing, trial counsel testified that given the seriousness of the assaults admitted by Cherco as a part of his guilty plea,[6] that although he did not recall telling Cherco to have character witnesses prepared to testify, he felt as a matter of strategy that platitudes that Cherco was a "nice guy" were not going to have any meaningful effect.[7] As a result, trial counsel instead attempted to garner mercy from the trial court by having Cherco express his willingness to serve the recommended and negotiated seven-year sentences. The motion court properly concluded that trial counsel's actions did not fall below the reasonable standard of care.

Trial counsel also testified that he had difficulty securing Cherco's cooperation prior to the sentencing hearing. Trial counsel attempted to contact Cherco on numerous occasions concerning the upcoming sentencing hearing. Cherco consistently failed to return these calls. In explanation, Cherco claimed that trial counsel only tried to contact him in the afternoons when he worked, that his cell phone did not get good service in his apartment, and that every time counsel left him a voicemail message he would call back as soon as he was able to. Tri-

al counsel testified that it was not until the actual day of sentencing that he had in person contact with Cherco. Trial counsel testified that on the day of sentencing Cherco "walked in saying 'what are we going to do today,' and I remember my response, well, haven't you thought it important enough to call me before walking in here to find out what we're going to do today, because this was an ongoing problem with him forever and ever." The motion court found that trial counsel's testimony was credible. We defer to the motion court's decisions concerning issues of credibility. *Betts*, 876 S.W.2d at 805.

Cherco's case is similar to *State v. Johnson*, 901 S.W.2d 60 (Mo. banc 1995). Johnson claimed that trial counsel failed to call a particular witness, "Linda," to testify, whom he claimed would have aided in his defense. *Id.* at 63. During the sentencing proceedings, the trial court questioned trial counsel as to why he failed to call Linda. Trial counsel stated that he: (1) did not find out about Linda until after the trial, and even then (2) the defendant failed to provide trial counsel with Linda's last name or address. *Id.* Because Johnson had failed to provide trial counsel with the necessary information, trial counsel was unable to call witnesses on Johnson's be-

---

6. The victim in this case testified at the sentencing hearing that she had been physically hurt on eleven different occasions, regarding five of which she had to call 9-1-1. She described in detail the most severe assault, and how during this assault Cherco kicked, hit, punched, and was found choking her when police arrived. Following this incident, she received sixty stitches in her left eye, ten in her right cheek, and had to have eye surgery to fix a fractured eye socket. The victim's mother testified that during this same incident, her daughter's injuries were so severe because Cherco had hit the victim in the face with a fistful of keys. The victim's mother also testified that when she arrived at the

hospital following this incident, her daughter did not have clothes on because Cherco had ripped them off of her during the altercation.

7. The six character witnesses testified at the post-conviction hearing. The witnesses all indicated they would have been available to testify during the sentencing hearing, and if called to testify, they would have stated they believed Cherco to be a good person, that Cherco was employed, that Cherco wanted to help the victim pay her medical bills, and that Cherco had expressed remorse concerning the multiple assaults for which he had pleaded guilty.

half, and Johnson's claim of ineffective assistance of counsel failed. *Id.* Johnson also claimed that trial counsel was ineffective for failing to call a convicted criminal serving time in a correction facility to testify on his behalf. *Id.* Trial counsel, when examined by the trial court, stated that calling such a witness could "have done more harm than good." *Id.* Our Supreme Court found that trial counsel's refusal to call a convicted criminal was reasonable trial strategy that negated Johnson's claim of ineffective assistance of counsel. *Id.* Although *Johnson* involved trial counsel's failure to call a witness at trial, *Johnson*'s rationale is equally applicable to trial counsel's failure to call character witnesses during Cherco's sentencing proceedings.

We conclude that the motion court's determination that trial counsel's failure to call character witnesses during the sentencing hearing did not fall below the objectively reasonable standard to which counsel is held was not clearly erroneous. Trial counsel's failure to call witnesses at the sentencing hearing was due to a combination of a lack of cooperation and responsiveness by Cherco, and a reasonable trial strategy. Cherco did not overcome the presumption that trial counsel's conduct was reasonable and effective. Cherco cannot establish the performance prong of *Strickland.*

■ Even if we were to conclude that trial counsel's failure to call character witnesses at the sentencing hearing fell below the objective standard of reasonableness, Cherco would nonetheless be obliged to satisfy *Strickland*'s prejudice prong. Cherco contends that in order to satisfy the prejudice prong, he need only show that had trial counsel presented character witnesses at sentencing, there is a reasonable probability that his sentence would have been lower. The State contends that Cherco is not permitted to demonstrate

prejudice in sentencing with a claim that but for his trial counsel's error, his sentence would have been lower, but instead must show that but for trial counsel's error, he would not have pleaded guilty and would have insisted on going to trial.

*Strickland* requires a showing of prejudice as a result of the deficient performance of counsel. 466 U.S. at 687, 104 S.Ct. 2052. *Strickland* does not expressly limit prejudice to a showing that but for the errors of counsel, the defendant would not have pleaded or been found guilty. A subsequent United States Supreme Court decision has construed the prejudice prong in cases involving a guilty plea to require a showing of "a reasonable probability that, but for counsel's errors, [movant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). The Missouri Supreme Court has stated that "[b]y pleading guilty, [movant] waived any claim that counsel was ineffective except to the extent that the conduct affected the voluntariness and knowledge with which the plea was made." *Worthington v. State,* 166 S.W.3d 566, 573 (Mo. banc 2005). The State argues that *Worthington* and *Hill* foreclose Cherco's claim of prejudice based on errors of counsel during sentencing, as Cherco has not alleged that but for those errors, he would not have plead guilty. Though *Worthington* and *Hill* both involved claims of ineffective assistance of counsel following a guilty plea, neither case involved a defendant's request to vacate sentencing without a corresponding request to set aside the defendant's guilty plea. Thus, the issue presented in this case was not addressed in either *Worthington* or *Hill.* In addition, other decisions in this state have described the prejudice prong more broadly than *Worthington* and *Hill.* In

*Middleton v. State,* 103 S.W.3d 726 (Mo. banc 2003), our Supreme Court, quoting *Strickland,* noted that the prejudice prong requires a showing that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* at 733 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). *Middleton* is cited with approval in *Worthington. Worthington,* 166 S.W.3d at 573. The broader description of prejudice drawn from *Strickland,* and quoted in *Middleton,* would not foreclose Cherco's claim.

We are unaware of any Missouri case which has squarely addressed the issue framed by this case. However, previous cases have permitted, without discussion, post-conviction relief limited to vacating a sentence. In *Pettis v. State,* 212 S.W.3d 189 (Mo.App. W.D.2007), trial counsel misinformed the trial court that the imposition of consecutive sentencing would "push back" defendant's potential parole, unaware that pursuant to Board of Probation and Parole's rules, "upon imposition of a consecutive term of imprisonment, [the defendant's] parole-eligible life sentence would definitely, immediately, and automatically convert to a sentence of life without possibility of parole." *Id.* at 194. The record reflected that the trial court operated under the same misapprehension as trial counsel when sentencing the defendant. *Id.* at 194–95. This court found, therefore, that the defendant had been prejudiced, and reversed the motion court's denial of defendant's Rule 24.035 motion, vacated the imposed sentence, and remanded with directions to re-sentence. *Id.* at 196. We noted " '[a] sentence passed on the basis of a materially false foundation lacks due process of law and entitle[s] the defendant to a reconsideration of the question of punishment in light of the true facts, regardless of the eventual outcome.' " *Id.* at 195 (citations omitted).

In support of its decision, *Pettis* cited *State v. Rowan,* 165 S.W.3d 552 (Mo.App. E.D.2005), and *Williams v. State,* 800 S.W.2d 739 (Mo. banc 1990). These cases involved, respectively, circumstances where a trial court sentenced a defendant based on a mistaken impression regarding the range of available sentence and whether sentences must run consecutively, and the defendant's eligibility for parole.

The State contends *Pettis,* and the supportive cases upon which it relied, are inapplicable to this case, as each involved sentencing imposed based on a court's misapprehension of the law. The State thus suggests that the relief available to a defendant pursuant to a Rule 24.035 motion can vary depending upon whether the claimed basis for the post-conviction motion is a court's misapprehension of the law or ineffective assistance of counsel. This argument ignores that *Pettis* involved both a claim of ineffective assistance of counsel and a concern that the trial court imposed sentencing in misapprehension of the law. *Pettis,* 212 S.W.3d at 194–95. The State's argument also fails to acknowledge other Missouri cases where the court has considered, albeit without discussion of the issue squarely framed in this case, post-conviction motions claiming ineffective assistance of counsel where an impact on sentencing is the only prejudice asserted. *See, e.g., Deck v. State,* 68 S.W.3d 418, 429–31 (Mo. banc 2002) (failure to offer mitigation instruction during penalty phase of capital murder case satisfied prejudice prong and warranted remand of case for new penalty phase); *Eichelberger v. State,* 134 S.W.3d 790, 792 (Mo.App. W.D.2004) (prejudice prong requires defendant to demonstrate a reasonable probability that a lesser sentence would have been imposed had counsel called character witnesses during the sentencing hearing). More to the point, the plain language of Rule 24.035 does not

permit the narrow construction of *Strickland*'s prejudice prong argued by the State.

■ Rule 24.035(a) provides that

[a] person convicted of a felony on a plea of guilty ... who claims that the **conviction *or* sentence** imposed violates the constitution and laws of this state or the constitution of the United States, *including* claims of ineffective assistance of trial and appellate counsel, that the court imposing the sentence was without jurisdiction to do so, or that the sentence was in excess of the maximum sentence authorized by law may seek relief in the sentencing court pursuant to the provisions of this rule 24.035.[8]

(Emphasis added.) The use of the disjunctive "or" between "conviction" and "sentence" necessarily means an aggrieved defendant can seek post-conviction relief relating *either* to the defendant's conviction *or* to the defendant's sentence. *Council Plaza Redevelopment Corp. v. Duffey*, 439 S.W.2d 526, 532 (Mo. banc 1969) (the disjunction "or" in its ordinary sense means "either"). The use of the word "including" before reference to ineffective assistance of counsel, a court lacking jurisdiction to impose a sentence or a court imposing a sentence inconsistent with the law, suggests each is an example of an "error" which can support a post-conviction claim that a conviction *or* sentence violates the law or the constitution. We see, therefore, no logical basis to interpret Rule 24.035 to permit correction of sentencing errors resulting from a trial court's misapprehension of the law but not to permit correction of sentencing errors resulting from ineffective assistance of counsel.

We acknowledge that the *Strickland* performance and prejudice prongs are only applicable to claims of ineffective assistance of counsel. In this respect, post-conviction motions under either Rule 29.15 or Rule 24.035 which allege ineffective assistance of counsel will be subject to an analysis that does not necessarily apply to a post-conviction claim that a court has misapprehended the law or exceeded its jurisdiction. However, the mere fact that *Strickland* developed standards which must be met to demonstrate ineffective assistance of counsel does not suggest or support the conclusion that the relief which can be afforded a defendant following a post-conviction motion claiming ineffective assistance of counsel should be artificially narrowed or limited to less than the relief available should other grounds be asserted for post-conviction relief. Our conclusion is consistent with *Strickland* which merely requires demonstration that "there is a reasonable probability that, but for counsel's unprofessional errors, *the result of the proceeding would have been different.*" 466 U.S. at 694, 104 S.Ct. 2052 (emphasis added). In Cherco's case, the "proceeding" at issue is the sentencing hearing. Cherco is arguing that but for counsel's errors, the result of his sentencing proceeding would have been different. Cherco's argument is consistent with the manner in which "prejudice" is defined in *Strickland*. Cases which have subsequently described the *Strickland* prejudice prong to require a defendant to demonstrate that but for trial counsel's errors, the defendant would not have pleaded guilty, must be fairly read as limited to situations where the defendant is seeking vacation of his guilty plea.

■ We conclude that the *Strickland* prejudice prong permits a defendant

---

8. Rule 29.15(a) reads nearly identically to Rule 24.035(a) with the exception that Rule 29.15(a) refers to convictions after trial, instead of convictions following a plea of guilty.

to argue prejudice in sentencing as a result of ineffective assistance of counsel without requesting vacation of the underlying guilty plea or finding of guilt. If a defendant aggrieved by ineffective assistance of counsel at sentencing is willing to abide by the guilty plea or conviction, the defendant nonetheless may have recourse under a post-conviction motion if the defendant demonstrates there is a reasonable probability that sentencing was influenced by ineffective assistance of counsel during sentencing. A motion court is permitted to vacate a sentence without vacating a conviction if prejudice in the sentencing phase is shown.[9]

Though we conclude that it was technically permissible for Cherco to claim prejudice affecting the outcome of his sentencing hearing without seeking to vacate his guilty plea, we also conclude that Cherco has failed to demonstrate prejudice with his argument that but for counsel's failure to call character witnesses his sentence would have been lower. The motion court heard testimony from the six character witnesses not called during the sentencing proceedings. The motion court concluded that had the witnesses testified at the sentencing hearing, there is no reasonable probability that more lenient sentences would have been imposed. The motion court's finding is not clearly erroneous.

Cherco contends the motion court made this finding improvidently, having noted that it had, as the trial court, imposed consecutive versus concurrent sentencing because Cherco was "on bond" from the First Case when he committed the Second Case. Cherco argues he was not "on bond" when he committed the Second Case and

that the motion court's comment thus revealed a clearly erroneous belief held by the trial court which prejudicially influenced sentencing, and which undermined the motion court's conclusion that the testimony from the character witnesses would not have impacted the sentencing. We do not agree.

The supplemental legal file submitted by the State reflects that bond was set in the First Case at $20,000 on October 25, 2005, the same date a warrant was issued for Cherco in the First Case. Though the record also reflects the bond was not posted until May 30, 2006, shortly after Cherco was charged in the Second Case, the import of the motion court's reference to being "on bond" could easily be construed as no more than a reference to Cherco having been previously charged. Whether Cherco knew that he had been charged in the First Case, or that bond had been set in the First Case at the time he committed the Second Case, is immaterial to whether the trial court could permissibly consider at sentencing that Cherco was being sentenced for serious criminal offenses committed on two separate occasions. Cherco cites us no authority to the contrary. In any event, though mentioned in the argument portion of point two of Cherco's brief, and more directly emphasized in oral argument, this claimed error is not raised in Cherco's point relied on and has not been preserved for our consideration. Rule 84.04(e).

We caution that our conceptual conclusion that the *Strickland* prejudice prong permits a defendant to argue that the outcome of a sentencing proceeding would

---

**9.** Of course, this determination will not prevent a defendant from claiming that ineffective assistance of counsel in the sentencing phase negated the knowing and voluntary nature of the guilty plea. Claims of ineffective assistance of counsel during sentencing usually involve a defendant's claim that he would not have pleaded guilty had he known and understood that a recommended sentence would not be binding on the court or a claim that counsel misinformed the defendant in some fashion about the effect of sentencing.

have been different but for counsel's deficient performance, without requesting vacation of a conviction, is unlikely to affect the disposition of post-conviction motions asserting that but for trial counsel's failure to call character witnesses, a sentence would have been ameliorated. In fact, it is difficult to envision a scenario where the weighty burden of establishing prejudice can be sustained by such a hypothetical supposition given the indeterminate nature of sentencing. That is particularly true where, as here, the sentencing court and the motion court are one in the same, rendering a motion court's finding that character witnesses would not have ameliorated the sentence virtually unchallengeable under the clearly erroneous standard.

Trial counsel's conduct in not calling character witnesses during the sentencing hearing was reasonable. Cherco was not prejudiced by trial counsel's failure to call character witnesses during the sentencing hearing. Point two is denied.

## Conclusion

The motion court's determination that Cherco knowingly and voluntarily pleaded guilty to several charges arising out of two separate criminal incidents is not clearly erroneous. Cherco did not demonstrate deficient performance of counsel or prejudice negating the voluntariness of his guilty plea, notwithstanding his claim that he was unaware the recommended sentence was not binding on the trial court or his claim that he was misinformed about his eligibility for parole. The motion court's determination that Cherco was properly sentenced notwithstanding trial counsel's failure to call character witnesses during the sentencing hearing is not clearly erroneous. Cherco did not overcome the presumption that trial counsel's decision not to call character witnesses during the sentencing hearing was sound trial strategy. *Strickland* permits Cherco to argue prejudice in his sentencing hearing by arguing that but for trial counsel's errors his sentence would have been lower without also arguing that but for trial counsel's errors he would not have pleaded guilty. However, Cherco failed to demonstrate prejudice as there is no reasonable probability that character witness testimony would have affected the sentence imposed by the trial court. We affirm the judgment of the motion court denying Cherco's Rule 24.035 post-conviction motion.

All concur.