Sherman BURNETT, Jr., Appellant,

v.

STATE of Missouri, Respondent.

No. ED 92543.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 22, 2009.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 25, 2010.

Application for Transfer Denied
June 29, 2010.

Timothy J. Forneris, Assistant Public Defender, St. Louis, MO, for appellant.

Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Sherman Burnett (Movant) appeals from the judgment of the Circuit Court of St. Louis County denying his Rule 24.035 motion for post-conviction relief without an evidentiary hearing. Movant asserts that the motion court clearly erred in denying his claims that: (1) the sentence imposed by the plea court violated the constitutional prohibition of "cruel and unusual punishment" and was arbitrary and capricious; and (2) plea counsel provided ineffective assistance by coercing him to plead guilty. We affirm.

### Factual and Procedural Background

Movant was fifteen years old on August 10, 2007, when he pleaded guilty to child kidnapping, forcible sodomy, first-degree assault, and attempted forcible rape, which

he committed at the age of thirteen.[1] At the plea hearing, the State recited the charges against Movant and stated that the range of punishment for child kidnapping and first-degree assault was ten to thirty years, or life, and the range of punishment for forcible sodomy and attempted forcible rape was five years to life.

Movant testified that he was pleading guilty freely and voluntarily; no one forced him to enter a plea of guilty to any of the charges; he did, in fact, commit the crimes with which he was charged; he was satisfied with his representation; he had sufficient time to discuss the matter with his attorney and anyone else with whom he wished to speak; and neither his plea counsel nor anyone else had pressured or forced him to enter pleas of guilty to any of the charges. The plea court then confirmed that Movant was not pleading pursuant to a plea agreement, and Movant stated that he understood that the court was therefore "free to consider the full range of punishment." The plea court went on to ensure that Movant understood the rights attendant to trial that he was forfeiting by pleading guilty.

At the plea court's request, the State clarified the factual bases for Movant's guilty plea. The prosecutor stated that, were the case tried, the State would present evidence that on November 11, 2005, Movant, then thirteen years of age, removed Victim, six years of age, from her home without her parents' consent and took her to some nearby railroad tracks. There, Movant removed Victim's clothes, beat her severely, and inserted his fingers into her vagina. Movant also rubbed his penis on Victim's vagina and choked her, leaving visible marks on her neck. Victim sustained serious injuries, including skull fractures, a lost tooth, a torn ear, a lacerated liver, a swollen duodenum, and "bruises from her head down to her thighs." Victim also suffered hypothermia as a result of being outside all night.

After the prosecutor recited the evidence, Movant again testified that he did, in fact, "do those things." The plea court found that Movant "freely, voluntarily and knowingly entered his pleas of guilty" and accepted Movant's plea. The plea court ordered the State Board of Probation and Parole to conduct a pre-sentence investigation, and, due to Movant's age, directed the State Board to consider the feasibility of dual jurisdiction.[2]

At Movant's sentencing hearing, the plea court stated that it had received the presentence investigation, as well as a report from the Missouri Division of Youth Services (DYS), letters written on Movant's behalf, and victim impact statements written by Victim and Victim's mother. Movant offered the testimony of Brent Buerck, the DYS senior program administrator who had assessed Movant and determined that DYS would accept Movant into its dual-jurisdiction program. On cross-examination, Mr. Buerck testified that, during his assessment, Movant had stated that "he had a temper" and the reasons he beat Victim so severely were "so she wouldn't remember anything" and "he wanted to make it look like somebody

---

**1.** On January 11, 2006, the Juvenile Division of the Family Court certified Movant to stand trial as an adult.

**2.** Under Section 211.073, when an offender is under seventeen years of age and has been transferred to a court of general jurisdiction and pleads guilty, the court "is authorized to impose a juvenile disposition under this chap-

ter and simultaneously impose an adult criminal sentence, the execution of which shall be suspended pursuant to the provisions of this section. Successful completion of the juvenile disposition ordered shall be a condition of the suspended adult criminal sentence." Mo.Rev.Stat. § 211.073 (2000).

else did it." Mr. Buerck also acknowledged that Movant attempted to mitigate responsibility for his crimes by telling him that Victim had thrown a rock at him, an allegation Movant first made during his interview with DYS.

The plea court declined defense counsel's request that it impose sentence pursuant to the dual-jurisdiction program, explaining:

> The Court has considered the evidence and the reports that have been submitted to it, and in light of the severity of the assault and what appears to be the threat of the Defendant to the community, the Court finds he is not an appropriate person for placement in the Dual Jurisdiction program.

The plea court then announced Movant's sentence, stating:

> The Court has reviewed a number of documents and has had a great deal of difficulty trying to figure out what an appropriate sentence would be in this particular case. However, the victim in her impact statement has given me some guidance. And she has said, I want for him to go away for sixty years, and that's what the sentence is going to be.

Thereafter, the plea court sentenced Movant to consecutive prison terms of twenty years for child kidnapping, twenty years for first-degree assault, ten years for forcible sodomy, and ten years for attempted forcible rape, for a total sentence of sixty years.

The plea court then asked Movant questions related to the effectiveness of his plea counsel. Movant testified that he would have liked "a little bit" more time to talk to plea counsel, but plea counsel had done what he asked, had not made any threats or promises to induce Movant to plead guilty, and had not suggested that he give any false answers to questions asked at the plea or sentencing hearings.

Movant acknowledged that he did not plead guilty pursuant to a plea agreement and stated that no one had promised him what the sentence was going to be before he entered his plea of guilty. Finally, Movant testified that he was not "in any way unhappy with the way [his] lawyer represented [him]." The plea court found no cause to believe counsel provided ineffective assistance.

Movant filed a Rule 24.035 motion for post-conviction relief, which counsel later amended. In his motion, Movant claimed that his sixty-year sentence constituted an unconstitutional and excessive punishment for a thirteen-year-old and that plea counsel was ineffective for pressuring Movant to plead guilty. The motion court found that Movant's claims were refuted by the record and denied Movant's motion without an evidentiary hearing. Movant appeals.

### Standard of Review

Our review of the motion court's denial of post-conviction relief pursuant to Rule 24.035 is limited to a determination of whether the motion court's findings and conclusions are clearly erroneous. Missouri Supreme Court Rule 24.035(k). As the motion court's findings and conclusions are presumed to be correct, they will be deemed clearly erroneous only if, upon a review of the record, we are left with the firm impression that a mistake has been made. *State v. Roll*, 942 S.W.2d 370, 375 (Mo. banc 1997).

### Discussion

#### 1. *Cruel and Unusual Punishment*

■ In his first point on appeal, Movant claims that the motion court clearly erred in denying his Rule 24.035 motion because the plea court's imposition of a sixty-year prison sentence was excessive and in viola-

tion of the Eighth Amendment of the United States Constitution and Article I, Section 21 of the Missouri Constitution.[3] Specifically, Movant argues that the sentence was improper because the plea court did not apply the factors set forth in *Roper v. Simmons,* 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). Movant further contends that the sentence was not proportionate to the offense, or the offender, and was arbitrary because it ignored DYS's recommendation and was based upon the eight-year-old Victim's impact statement. We disagree.

"[T]he Eighth Amendment guarantees individuals the right not to be subjected to excessive sanctions." *Roper,* 543 U.S. at 560, 125 S.Ct. 1183. "The right flows from the basic precept of justice that punishment should be graduated and proportioned to the offense." *Id.* (quoting *Atkins v. Virginia,* 536 U.S. 304, 311, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002)). A sentence for a term of years will be deemed cruel and unusual only if it is "grossly disproportionate" to the crime committed. *Lockyer v. Andrade,* 538 U.S. 63, 72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003); *State v. Pribble,* 285 S.W.3d 310, 314 (Mo. banc 2009) ("[R]eviewing courts are to determine, as a threshold matter, whether a sentence is 'grossly disproportionate.' "). To determine whether a sentence is grossly disproportionate, we compare the gravity of the offense to the harshness of the penalty. *Ewing v. California,* 538 U.S. 11, 28, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003); *Pribble,* 285 S.W.3d at 314. Gross disproportionality will be found only in "exceedingly rare" and "extreme" cases. *Lockyer,* 538 U.S. at 73, 123 S.Ct. 1166 (quotation omitted).

Section 557.036.1 directs courts to "decide the extent or duration of sentence or other disposition to be imposed under all the circumstances, having regard to the nature and circumstances of the offense and the history and character of the defendant and render judgment accordingly." Mo.Rev.Stat. § 557.036.1 (2000). In other words, it is the sentencing court's duty "to impose a sentence on a case-by-case basis, and to fashion the punishment to both the crime and the criminal." *State v. Collins,* 290 S.W.3d 736, 746 (Mo.App. E.D.2009). When the sentence imposed is within the range prescribed by statute, the sentence generally will not be found excessive, or grossly disproportionate, to the crime committed. *State v. Mubarak,* 163 S.W.3d 624, 631 (Mo.App. S.D. 2005).

The record establishes that the plea court properly considered Movant's crimes and Movant himself. *See State v. Lindsey,* 996 S.W.2d 577, 579 (Mo.App. W.D.1999). After Movant pleaded guilty, the plea court ordered a pre-sentence investigation and specifically instructed the State Board of Probation and Parole to "consider the feasibility of dual jurisdiction." At the sentencing hearing, the plea court stated that it would consider the presentence investigation, DYS's report regarding Movant's eligibility for the dual-jurisdiction program, and the victim impact statements of Victim and her mother. The plea court then heard Mr. Buerck's testimony and plea counsel's argument, in which she re-

---

**3.** The Eighth Amendment of the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. XIII. Section 21 of the Missouri Constitution provides the same protection against cruel and unusual punish-

ment. Mo. Const. art. I, § 21. We apply the same standard in determining whether a punishment violates the United States Constitution or Missouri Constitution. *State v. Dillard,* 158 S.W.3d 291, 305 (Mo.App. S.D. 2005).

quested Movant be sentenced pursuant to the dual-jurisdiction law. The plea court stated that it had considered the evidence and the reports before it, and found that "in light of the severity of the assault and what appears to be the threat of [Movant] to the community," Movant was not an appropriate candidate for the dual-jurisdiction program. The plea court therefore sentenced Movant to a term of imprisonment totaling sixty years and remanded Movant's custody to the Missouri Department of Corrections.

■ "A punishment is not cruel and unusual because of its duration unless so disproportionate to the offense committed as to shock the moral sense of all reasonable men as to what is right and proper under the circumstances." *State v. Mubarak*, 163 S.W.3d at 631 (quoting *State v. Brownridge*, 353 S.W.2d 715, 718 (Mo. 1962)). In this case, Movant told the plea court that he kidnapped a six-year-old child, sexually assaulted her, and beat her so severely that she suffered serious and extensive injuries. Even when we take into consideration Movant's age at the time of the crimes, we cannot say that a sixty-year sentence for this crime shocks the "moral sense of all reasonable" people.

Further, Movant's sentence was within the statutory range of punishment for the crimes to which he pleaded guilty. As previously mentioned, a sentence within the range prescribed by statute generally will not be found excessive, or grossly disproportionate, to the crime committed. *State v. Mubarak*, 163 S.W.3d at 631. This is because we owe substantial deference to the legislature's determination of proper punishment. *Pribble*, 285 S.W.3d at 314. Here, Movant pleaded guilty to child kidnapping and first-degree assault, both Class A felonies punishable by ten to thirty years' imprisonment, or life, and the unclassified felonies of forcible sodomy and attempted forcible rape, both punishable by five years to life. As such, the maximum sentence to which Movant was subject was four consecutive life sentences. We note that the plea court did not impose the maximum sentence, but rather sentenced Movant to consecutive sentences of twenty years, twenty years, ten years, and ten years, respectively. We therefore find that Movant's sentence was proportionate to the severity of the crimes and within the statutory range of punishment for those crimes.

Movant claims that the sentence imposed by the plea court is unconstitutional because the the court failed to apply the factors outlined in *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). In *Roper*, the United States Supreme Court held that the Eighth Amendment prohibits execution of offenders who were under eighteen years of age at the time of their capital crimes. *Id.* at 578, 125 S.Ct. 1183. In reaching this conclusion, the Court identified three differences between juveniles and adults that "demonstrate that juvenile offenders cannot with reliability be classified among the worst offenders." *Id.* at 569, 125 S.Ct. 1183. The three differences are: (1) a general lack of maturity and undeveloped sense of responsibility; (2) a greater susceptibility to negative influences and outside pressures; and (3) a more transitory and less fixed character. *Id.* at 569–70, 125 S.Ct. 1183. The Court found that, in addition to diminishing the culpability of juvenile offenders, these differences weaken the penological justifications for applying the death penalty to juveniles. *Id.* at 571, 125 S.Ct. 1183.

We decline to extend the reasoning of *Roper* to the instant case. We note initially that *Roper* operates only to prohibit the imposition of the death penalty on juvenile offenders. *Id.* at 578, 125 S.Ct. 1183. It is

quite clear that the *Roper* Court envisioned the possibility that serious crimes, such as this one, committed by a young offender might deserve a long prison sentence: "When a juvenile offender commits a heinous crime, the State can exact forfeiture of some of the most basic liberties, but the State cannot extinguish his life...." *Id.* at 574, 125 S.Ct. 1183. In fact, the *Roper* Court affirmed the Missouri Supreme Court's decision, which resentenced the defendant to life imprisonment without eligibility for probation. *Id.* at 560, 125 S.Ct. 1183. Additionally, the United States Supreme Court has stated that decisions applying the prohibition of cruel and unusual punishments to capital cases are of limited assistance in deciding the constitutionality of a prison sentence.[4] *Rummel v. Estelle,* 445 U.S. 263, 272, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). Because *Roper* was based largely on the "special force" with which the Eighth Amendment applies to imposition of the death penalty, it does not compel us to consider the factors articulated therein in non-capital cases. *See U.S. v. Salahuddin,* 509 F.3d 858, 863 (7th Cir.2007) (holding that *Roper* does not prohibit basing an increased sentence on offenses the defendant committed as a juvenile); *see also U.S. v. Feemster,* 483 F.3d 583 (8th Cir. 2007) (same).

Movant also argues that the sixty-year sentence was arbitrary and capricious because the plea court declined to follow DYS's recommendation of dual-jurisdiction placement. The decision of whether to place an offender in the dual-jurisdiction program is a matter within the plea court's discretion. Mo.Rev.Stat. § 211.073.1. Additionally, in its Findings of Fact and Conclusions of Law denying Movant's Rule 24.035 motion, the motion court found that the plea court's decision was a "considered rejection" of the DYS recommendation. We find that the motion court did not clearly err in concluding that Movant's crimes "reflect[ed] extremely violent conduct," and therefore "support[ed] the trial court's decision to sentence for a longer term as an extremely dangerous criminal."

■ Finally, Movant claims that the sentence was arbitrary and capricious because the plea court "based its sentences only on the victim's statement that she wanted [Movant] to receive sixty years." When the plea court announced Movant's sentence, it acknowledged the difficulty of determining a proper sentence and used as guidance Victim's desire that Movant "go away for sixty years." "While victims may assert a right to be heard at sentencing, the sentencing decision is wholly within the discretion of the judge." *Hutchison v. State,* 150 S.W.3d 292, 300 (Mo. banc 2004). However, in exercising this discretion, the court may "receive any information from any source it deems relevant to the sentencing process, including [witnesses'] recommendations as to the appropriate sentence to be imposed." *Adams v. State,* 951 S.W.2d 722, 725 (Mo.App. W.D.1997), *abrogated on other grounds by Deck v. State,* 68 S.W.3d 418, 427 (Mo. banc 2002). We do not find that the plea court acted arbitrarily in allowing the victim impact statement to guide, in part, the sentencing decision. More importantly, it is clear from the record that the plea court did not rely solely on the victim impact statement, but carefully considered the facts admitted by Movant at the plea hearing and substantiated by the pre-sentence investigation. Point denied.

---

4. The Court explained that the death penalty differs in kind from any sentence of imprisonment because of its irrevocability, complete "rejection of rehabilitation of the convict as a basic purpose of criminal justice," and "renunciation of all that is embodied in our concept of humanity." *Rummel,* 445 U.S. at 272, 100 S.Ct. 1133 (quoting *Furman v. Georgia,* 408 U.S. 238, 306, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972)).

### 2. Ineffective Assistance of Counsel

■ In his second point on appeal, Movant claims that the motion court clearly erred in denying without an evidentiary hearing his post-conviction claim that his plea counsel was ineffective. Specifically, Movant claims that his plea counsel was ineffective because she pressured him to plead guilty by assuring him he would receive dual jurisdiction, advising him not to go to trial, and urging Movant's family to pressure him to accept a plea bargain.

■ To prevail on a claim of ineffective assistance of plea counsel, a movant must show that (1) counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney, and (2) counsel's deficient performance prejudiced the movant. *State v. Nunley*, 980 S.W.2d 290, 292 (Mo. banc 1998). A movant establishes prejudice by demonstrating that but for counsel's ineffectiveness, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Once a defendant enters a plea of guilty, ineffective assistance of counsel is relevant only to the extent it affected the voluntariness of the plea. *Redeemer v. State*, 979 S.W.2d 565, 569 (Mo.App. W.D.1998).

■ To show that he was entitled to an evidentiary hearing on his motion for post-conviction relief, a movant must show that he alleged facts, not conclusions, warranting relief that were not refuted by the files and record of his case. *Roberts v. State*, 276 S.W.3d 833, 835 (Mo. banc 2009). An evidentiary hearing is not required when the files and records of the case conclusively show that a movant is not entitled to relief. Missouri Supreme Court Rule 24.035(h); *Mayes v. State*, 950 S.W.2d 933, 935 (Mo.App. S.D.1997).

Movant claims that he did not understand the consequences of a blind plea and counsel told him that, if he pleaded guilty, he would be sentenced within the juvenile system under the dual-jurisdiction law. Movant's claims were refuted by the record and, thus, properly denied without an evidentiary hearing.

At his sentencing hearing, Movant testified that he understood he was not pleading guilty pursuant to a plea agreement "so the Court [was] free to consider the full range of punishment" in his case. Movant also testified that neither his attorneys nor anyone else had "put any pressure on [him] or in any way forced [him] to enter pleas of guilty." The plea court found that Movant entered his plea "freely, voluntarily, and knowingly," and accepted the plea. After the plea court announced Movant's sentence at the sentencing hearing three months later, Movant again testified that he had not pleaded guilty pursuant to a plea agreement, and he affirmed that no one had promised him what his sentence would be before he entered his plea. Movant also expressed satisfaction with plea counsel's services.

Movant claims that the plea court's inquiries were not sufficiently specific to conclusively refute his allegations of ineffective assistance of counsel. We disagree. The plea court asked numerous questions ensuring that Movant understood the proceedings and the consequences of a blind guilty plea. The court specifically asked Movant whether his lawyers or any other person had pressured him to plead guilty, and he answered in the negative. The court also asked Movant, after announcing the sentence, whether anyone had promised him what his sentence would be, and Movant answered "no." The plea court's questions were specific enough to elicit answers that directly refuted Movant's claims that his counsel assured him he would be sentenced under the dual-jurisdiction law and that his counsel and, at

counsel's urging, Movant's family, pressured Movant to plead guilty. *See Yates v. State*, 158 S.W.3d 798, 803 (Mo.App. E.D. 2005). Furthermore, Movant had ample opportunity to complain about counsel, but instead stated unequivocally that he was satisfied with counsel's performance and no one had pressured him to plead guilty. *See Morrison v. State*, 65 S.W.3d 561, 564 (Mo.App. W.D.2002).

██ Movant further claims that plea counsel advised him not to take his case to trial because "he had a chance of receiving a life sentence," and she pressured Movant's parents to urge him to plead guilty. The mere prediction or advice of counsel relating to the probable outcome of a client's case does not support a finding of coercion rendering a guilty plea involuntary. *Meeks v. State*, 876 S.W.2d 755, 756 (Mo.App. E.D.1994). Counsel had a duty to explain to Movant the range of punishment he could receive and to caution Movant that he might receive a longer sentence if, instead of entering a plea of guilty, he insisted on going to trial. *See Moore v. State*, 207 S.W.3d 725, 730–31 (Mo.App. S.D.2006). Likewise, plea counsel accurately advised Movant that the plea court could sentence him under the dual-jurisdiction law. Mo.Rev.Stat. § 211.073. The fact that Movant received a longer sentence than he hoped for does not render his plea involuntary. *See Cain v. State*, 859 S.W.2d 715, 717 (Mo.App. E.D. 1993). Point denied.

### Conclusion

The judgment of the motion court is affirmed.

SHERRI B. SULLIVAN, P.J., and ROBERT G. DOWD, JR., J., Concur.