

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| GABRIEL KNIGHT DAWSON, | ) | |
| | ) | |
| Appellant, | ) | **WD82441** |
| v. | ) | |
| | ) | |
| | ) | **OPINION FILED:** |
| | ) | **July 14, 2020** |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Buchanan County, Missouri**
**The Honorable Patrick K. Robb, Judge**

**Before Division Two:** Mark D. Pfeiffer, Presiding Judge, and
Alok Ahuja and Edward R. Ardini, Jr., Judges

This post-conviction relief appeal involves a claim of ineffective assistance of counsel and a claim that the sentencing court imposed a sentence without consideration of mandatory juvenile sentencing guidelines. It also involves a procedural scenario in which the *sentencing* court and the post-conviction relief *motion* court are one and the same. Though this procedural circumstance is not dispositive of the appeal, where the *motion* court details an objectively reasonable basis why the *sentencing* court would not have been persuaded to sentence the defendant any differently after being apprised of new evidence and legal arguments at the Rule 24.035 hearing, the motion court's finding that there is no prejudice is not clearly erroneous.

Specifically, Mr. Gabriel Knight Dawson ("Dawson") appeals from the judgment of the Circuit Court of Buchanan County, Missouri ("motion court"), denying his Rule 24.035[1] motion for post-conviction relief after an evidentiary hearing. On appeal, Dawson contends that the motion court clearly erred in denying his claim that the sentencing court "improperly sentenced" him without considering a sentence under the dual-jurisdiction statute, § 211.073,[2] and in denying his claims that plea counsel was ineffective for failing to present mitigation evidence at his sentencing hearing. We affirm.

## Factual and Procedural History[3]

Dawson was born on September 21, 1999. On November 16, 2015, due to numerous acts of juvenile delinquency, Dawson was placed within the jurisdiction of the Circuit Court of Buchanan County, Juvenile Division ("juvenile court"), and was placed on probation (which he violated on numerous occasions) and supervision of the juvenile court. After Dawson participated in a crime that led to the death of his criminal accomplice, on June 1, 2016, the Juvenile Office filed a motion for certification seeking to certify Dawson to be prosecuted in a court of general jurisdiction for the commission of murder in the second degree, which would be a felony if committed by an adult. After a hearing, on July 13, 2016, the juvenile court entered an order that Dawson be transferred to a court of general jurisdiction for the purpose of such prosecution and that he be released from the jurisdiction of the juvenile court. On the same day, Dawson was charged in the Circuit Court of Buchanan County with the class B felony of attempted robbery in the first degree in that on May 17, 2016, he attempted to carry out a robbery of another's property by threatening the use of a deadly weapon.

---

[1] All rule references are to I MISSOURI COURT RULES – STATE 2019.
[2] All statutory references are to the REVISED STATUTES OF MISSOURI 2016.
[3] "On appeal of the denial of a Rule 24.035 motion, we view the facts in the light most favorable to the motion court's judgment." *Bishop v. State*, 566 S.W.3d 269, 270 n.3 (Mo. App. W.D. 2019).

In exchange for the prosecutor's agreement that he would not be charged with felony murder, on October 6, 2016, Dawson filed a petition to enter a plea of guilty to the charge of felony robbery, and the sentencing court held a hearing on Dawson's petition. The sentencing court questioned Dawson regarding the factual basis for his plea, which established that Dawson and an accomplice engaged in a robbery that ultimately resulted in the death of his accomplice. After first questioning Dawson and confirming that he understood the range of punishment included a sentence of up to fifteen years with no probation, that neither plea counsel nor anyone else had promised or assured him that he would receive probation or a particular sentence, and that nobody had promised or assured him that he would be released on parole after serving a certain portion of the sentence imposed, the sentencing court found that Dawson's plea was made voluntarily and knowingly and that he was guilty as charged of the class B felony of attempted robbery in the first degree.

Before pronouncing sentence, the sentencing court ordered a sentencing assessment report ("SAR"). On December 12, 2016, the sentencing court held a sentencing hearing and sentenced Dawson to fourteen years' imprisonment in the Missouri Department of Corrections. After imposing sentence, the sentencing court questioned Dawson and confirmed with him that he understood that the sentence he received was within the sentencing range for the crime to which he pleaded guilty, that he had not been made any promises by anyone about probation or parole, and that he was satisfied with the legal representation that he had received from his plea counsel.

Subsequently, Dawson timely filed a *pro se* Rule 24.035 motion, and appointed counsel timely filed an amended motion. In Dawson's amended motion, he alleged that: (1) the sentencing court erred in sentencing him by failing to consider dual jurisdiction as a possible sentence as required by section 211.073, in violation of his right to due process of law; (2) plea counsel

3

provided ineffective assistance by failing to investigate and present evidence of adolescent development at Dawson's sentencing hearing for mitigation purposes, and he was prejudiced thereby because had such evidence been presented, there is a reasonable probability the plea court would have sentenced him to a lesser term of incarceration or sentenced him pursuant to section 211.073, in the custody of the Division of Youth Services ("DYS"); and (3) plea counsel provided ineffective assistance by failing to investigate and present mitigation evidence from Dawson's family members and weightlifting coach at his sentencing hearing, and had plea counsel called the witnesses to testify, there is a reasonable probability the plea court would have sentenced him to a lesser sentence.

The motion court held an evidentiary hearing on August 30, 2018. Dawson presented the testimony of the senior program administrator with the DYS, who testified regarding the dual-jurisdiction program. Plea counsel testified regarding her representation of Dawson. A neuropsychologist, Dr. Sandi Isaacson, testified regarding adolescent brain-behavior relationships and the results of her evaluation of Dawson while he was in custody when he was seventeen years old. Dawson's mother, grandmother, great-aunt, and weightlifting coach all testified as to Dawson's good character. Dawson testified on his own behalf by deposition.

Following the evidentiary hearing, the motion court entered its findings of fact, conclusions of law, and judgment denying the claims in Dawson's amended Rule 24.035 post-conviction motion.

Dawson timely appealed.

### Standard of Review

Our review of the motion court's decision on a Rule 24.035 motion is limited to determining whether its findings of fact and conclusions of law are clearly erroneous. The motion court's findings and conclusions are clearly erroneous only

4

if a review of the entire record by the appellate court results in a definite and firm impression that a mistake has been made.

*Pettis v. State*, 212 S.W.3d 189, 192-93 (Mo. App. W.D. 2007) (internal citations and quotations omitted).

## Analysis

## Point I

In Dawson's first point, he asserts that the motion court clearly erred in denying his claim that the sentencing court committed reversible error when it "improperly sentenced [Dawson] without considering a sentence under the dual-jurisdiction statute, Section 211.073" and such sentencing error prejudiced Dawson since a "reasonable judge" would have sentenced Dawson to a dual-jurisdiction sentence had it been considered by such "reasonable judge."

The State argues that Dawson's claim is not cognizable in a Rule 24.035 motion. We disagree. In effect, Dawson's claim in this point on appeal is that the sentencing court failed to sentence him according to the law as mandated by section 211.073 and, hence, illegally sentenced him. "[A] claim that a defendant was illegally sentenced following a guilty plea 'may be considered only in response to a Rule 24.035 motion.'" *Gray v. State*, 498 S.W.3d 522, 528-29 (Mo. App. W.D. 2016) (quoting *State v. Onate*, 398 S.W.3d 102, 106 (Mo. App. W.D. 2013)). Simply put, post-conviction relief motions have long been recognized by Missouri courts as an appropriate procedural vehicle to seek relief for a sentencing court's misapprehension or misapplication of the law in sentencing the defendant. *See Wraggs v. State*, 549 S.W.2d 881 (Mo banc 1977); *Williams v. State*, 800 S.W.2d 739 (Mo. banc 1990); *Pettis*, 212 S.W.3d 189.

That said, no Missouri court has *presumed* prejudice in such a post-conviction claim of sentencing error. *See Pettis*, 212 S.W.3d at 194-95 ("The prejudice is obvious" . . . where the sentencing court expressly misconstrued the effect of sentencing the defendant to a consecutive

5

term after expressing its interest in showing leniency to the defendant); *Williams*, 800 S.W.2d at 740-41 (prejudice found where the sentencing court misconstrued the applicable sentencing statute to impose a lengthier sentence than required by law where sentencing court expressly noted that it believed it had shown leniency and imposed the minimum sentence required by law); *Wraggs*, 549 S.W.2d at 883 (sentencing court improperly enhanced sentence with previous convictions of defendant that were not entitled to be used to enhance the defendant's sentence).

"Post-conviction proceedings are not criminal proceedings, but are considered civil in nature." *Wartenbe v. State*, 583 S.W.3d 115, 120 (Mo. App. E.D. 2019) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 556-57, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987)). "[P]ost-conviction proceedings pursuant to Rules 24.035 and 29.15 are civil proceedings . . . [and] are 'governed by the rules of civil procedure insofar as applicable.'" *Watson v. State*, 545 S.W.3d 909, 911 (Mo. App. W.D. 2018) (quoting Rule 24.035(a); Rule 29.15(a)). Hence, "'[e]ven assuming the circuit court erred . . . an error does not warrant reversal on appeal unless the error results in prejudice.'" *Cygnus SBL Loans, LLC v. Hejna*, 584 S.W.3d 324, 332 (Mo. App. W.D. 2019) (quoting *Barron v. Abbott Labs., Inc.*, 529 S.W.3d 795, 798 (Mo. banc 2017)).

As relevant to Dawson's sentence imposed by the sentencing court, section 211.073.1 provides, in part, that:

> [t]he court **shall**, in a case when the offender is under seventeen years and six months of age and has been transferred to a court of general jurisdiction pursuant to section 211.071, and whose prosecution results in a conviction or a plea of guilty, **consider dual jurisdiction of both the criminal and juvenile codes**, as set forth in this section.

(Emphasis added.) As this court has explained:

> Section 211.073 gives a court the authority to "invoke dual jurisdiction of both the criminal and juvenile codes," § 211.073.1, in cases involving an offender under seventeen [and six months of age] who is transferred to a circuit court of general jurisdiction and whose prosecution results in a conviction. Under section 211.073,

6

the circuit court may impose a juvenile disposition and "simultaneously impose an adult criminal sentence, the execution of which shall be suspended pursuant to the provisions of this section." *Id*.

*State v. Elliott*, 502 S.W.3d 59, 64 (Mo. App. W.D. 2016) (quoting *State ex rel. Sanders v. Kramer*, 160 S.W.3d 822, 824 (Mo. App. W.D. 2005)). "The decision regarding whether to place an offender under the dual jurisdiction program is a matter for the court's discretion." *Id.* at 64-65 (Mo. App. W.D. 2016) (citing *Burnett v. State*, 311 S.W.3d 810, 816 (Mo. App. E.D. 2009)).[4]

Here, plea counsel testified that she spoke with Dawson about "dual jurisdiction" with DYS and Dawson "was very adamant about wanting probation. He did not want to go to DYS." So, a conscious decision was made by Dawson and his plea counsel *not* to seek dual-jurisdiction consideration by the sentencing court under the juvenile code and, instead, to seek probation under the general criminal code. Hence, at the sentencing hearing, section 211.073 was not mentioned. But, when the sentence imposed was not what Dawson wanted, Dawson *then* argued via his Rule 24.035 motion that his due process rights were violated by the sentencing court's failure to consider dual jurisdiction.[5]

Dawson, however, ignores that the motion court and sentencing court are one and the same and that "[s]pecial deference is given when the PCR judge and the [sentencing] judge are the same." *Goodwater v. State*, 560 S.W.3d 44, 55 (Mo. App. W.D. 2018). Further, "[a] motion

---

[4] In 2013, the legislature amended section 211.073, changing "[t]he court **may**, in a case when the offender is under seventeen years of age and has been transferred to a court of general jurisdiction pursuant to section 211.071, and whose prosecution results in a conviction or a plea of guilty, **invoke dual jurisdiction** of both the criminal and juvenile codes," to "[t]he court **shall**, in a case when the offender is under seventeen years and six months of age and has been transferred to a court of general jurisdiction pursuant to section 211.071, and whose prosecution results in a conviction or a plea of guilty, **consider dual jurisdiction** of both the criminal and juvenile codes." § 211.073.1 (emphasis added). Under either version of the statute, whether to place an offender in the dual-jurisdiction program is within the court's discretion.

[5] In circumstances where, as here, the defendant is *not* claiming that his guilty plea was not knowingly, voluntarily, and intelligently entered into *and* where the defendant was aware of a relevant sentencing statute but consciously chose not to bring that statute to the sentencing court's attention until *after* sentencing, at least one court has concluded that the issue is deemed waived as it relates to the defendant's Rule 24.035 motion. *Borneman v. State*, 573 S.W.3d 83, 88 (Mo. App. S.D. 2019).

court's findings are presumptively correct. In this case, they carry special weight since the motion court also was the [sentencing] court. . . ." *Joos v. State*, 277 S.W.3d 802, 804 (Mo. App. S.D. 2009) (internal citation omitted). And, though the *motion* court judge candidly admitted in the Rule 24.035 proceedings that the *sentencing* court judge "did not consider Dawson for imposition of dual jurisdiction" as mandated by section 211.073, the motion court identified a litany of reasons why this same judge would *not* have imposed a different sentence had he considered section 211.073 at sentencing—a sentence that the motion *and* sentencing judge indicated was the most lenient the judge was willing to consider under the circumstances, which were:

- Dawson's history with the juvenile court was poor and Dawson had violated numerous juvenile court probation orders before engaging in the current felony crime that led to a fatality.

- The motion court, having heard the testimony of Dr. Isaacson at the Rule 24.035 evidentiary hearing about development of the adolescent brain, noted that he had already considered such topics—as the sentencing judge—since he knew Dawson was a young offender when he sentenced him.

- The motion court, as the sentencing court, had already considered a "good character" testimonial by a relative in the SAR before imposing sentence.

- Dawson's crime in question had caused a fatality and he could have been charged with felony murder, which carried a stiffer sentencing range.

- Dawson knew his accomplice had a gun and it would be used to rob the victim.

- Dawson ran from the scene after shots were fired but, after he knew his accomplice had been shot, he returned to the scene to collect the stolen marijuana.

- The sentencing court heard and considered an emotional victim impact statement from the mother of the deceased accomplice.

- Dawson showed little remorse at sentencing and simply stated that "all I want to do is turn my life around" and "I need another chance."

- Though there was evidence that, at sentencing, Dawson would have been *eligible* for placement with DYS, there is no evidence that DYS had room for his placement at that time nor would otherwise have *accepted* Dawson for placement at that time.

8

- The motion court judge, also the sentencing court judge, noted that while he was required to consider dual jurisdiction, "there is no requirement that a sentencing court impose a dual jurisdiction sentence" and, ultimately, under Dawson's circumstances, the judge concluded that there simply was no prejudice to Dawson, from which we infer that the judge concluded he would *not* have exercised his discretion to sentence Dawson to a dual-jurisdiction sentence.

In *Burnett v. State*, 311 S.W.3d 810 (Mo. App. E.D. 2009), the plea court considered dual jurisdiction and "declined to follow DYS's recommendation of dual-jurisdiction placement." *Id.* at 816. The *Burnett* court noted that "[t]he decision of whether to place an offender in the dual-jurisdiction program is a matter within the plea court's discretion." *Id*. (citing § 211.073.1). Additionally, the *Burnett* court observed that in denying the movant's Rule 24.035 motion, "the motion court found that the plea court's decision was a 'considered rejection' of the DYS recommendation." *Id.* The *Burnett* court found that "the motion court did not clearly err in concluding that Movant's crimes 'reflect[ed] extremely violent conduct,' and therefore 'support[ed] the trial court's decision to sentence for a longer term as an extremely dangerous criminal.'" *Id*.

Similarly, here, having been given the opportunity to "consider" the dual-jurisdiction sentencing statute, albeit during the Rule 24.035 proceedings, the motion court simply concluded that—wearing the hat of the sentencing court—it would not have sentenced Dawson differently. By having the same judge serving as both the sentencing court and the motion court, the record presents an objectively reasonable and "considered rejection" of dual jurisdiction by that same judge. While the concurring opinion is correct to note that a mere *subjective* foreclosure of consideration of prejudice by the motion court (who was also the sentencing court) is legally insufficient analysis by the motion court, *Strickland v. Washington*, 466 U.S. 668, 695 (1984), the motion court below did, in fact, provide an *objective* basis for his Rule 24.035 ruling and it is this

9

objective analysis by a motion court who also served as the sentencing court that our state's appellate courts have given special deference to as a practical matter.

There were objectively reasonable grounds for the motion court to conclude that, acting as the sentencing court, it would not have invoked dual jurisdiction and imposed a juvenile disposition. The motion court did not clearly err in its prejudice analysis and, absent prejudice, Dawson's point on appeal fails.

Point I is denied.

**Points II and III**

In Dawson's second and third points on appeal, he asserts that the motion court erred in denying his claim that plea counsel provided ineffective assistance during the sentencing proceedings by failing to present mitigating evidence of adolescent development through the testimony of Dr. Isaacson (Point II), and by failing to present mitigating character evidence through the testimony of his mother, grandmother, great-aunt, and weightlifting coach (Point III). Dawson does not contend that but for counsel's failure to call these witnesses during the sentencing hearing he would not have pleaded guilty. Instead, Dawson contends that because of plea counsel's failure to present this evidence at his sentencing hearing, he was prejudiced because "a reasonable judge" would have considered the testimony and imposed a lower sentence or placed Dawson in the dual-jurisdiction program. He does not seek to withdraw his guilty plea, but only to have his sentence vacated and be resentenced.

"A claim of ineffective assistance of counsel at sentencing following a guilty plea is a 'cognizable' claim under Rule 24.035." *Cherco v. State*, 309 S.W.3d 819, 825 (Mo. App. W.D. 2010). "If a defendant aggrieved by ineffective assistance of counsel at sentencing is willing to abide by the guilty plea or conviction, the defendant nonetheless may have recourse under a

10

post-conviction motion if the defendant demonstrates that sentencing was influenced by ineffective assistance of counsel during sentencing." *Id.* at 830. "[T]he two-pronged test from *Strickland* applies equally to claims of ineffective assistance of counsel arising out of a sentencing hearing." *Id*. at 825 (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

To state a claim for post-conviction relief because of ineffective assistance of counsel, the movant must show by a preponderance of the evidence that: (1) counsel's performance was deficient because she failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances; and (2) counsel's deficient performance prejudiced the movant. *Id.* (citing *Strickland*, 466 U.S. at 687). In order to satisfy the performance prong, Dawson must demonstrate that plea counsel's failure to call character witnesses at his sentencing hearing fell below an objective standard of reasonableness. *Id.* (citing *Strickland*, 466 U.S. at 688). In order to establish the prejudice prong, Dawson "must demonstrate that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Jones v. State*, 541 S.W.3d 694, 697 (Mo. App. W.D. 2018) (quoting *Strickland*, 466 U.S. at 694).

"Applied to claims of ineffective assistance of counsel at sentencing, a movant must show that but for sentencing counsel's errors . . . the result of the sentencing would have been different, specifically, that his sentence would have been lower." *Id*. (internal quotation marks omitted). "A movant claiming ineffective assistance must overcome a strong presumption that counsel provided competent representation." *Id.* (internal quotation marks omitted). "Because a movant must establish both deficient performance by counsel and prejudice, if a movant fails to establish one prong, a court need not address or consider the other." *Id*. (citing *O'Neal v. State*, 766 S.W.2d 91,

11

92 (Mo. banc 1989)). "As a matter of strategy, the decision not to call a witness is 'virtually unchallengeable.'" *Id*. at 699 (quoting *Cherco*, 309 S.W.3d at 825).

At the evidentiary hearing, Dawson presented evidence from Dr. Isaacson regarding adolescent brain-behavior relationships; from Dawson's mother, grandmother, great-aunt, and weightlifting coach about his character; and from plea counsel about her representation.

Dr. Isaacson testified that she conducted an evaluation of Dawson when he was seventeen years old while he was in custody. The results of her testing showed that Dawson "was of at least average intellectual ability, that he was able to express himself verbally and forthrightly and present a narrative of his own background and trauma." She determined that "his maturity was fairly average for a 17-year-old, albeit with some indications of impulsivity, depression, anxiety, and trauma which delayed his development of adequate coping ability and adequate ability to manage stress and anxiety."

Plea counsel testified at the evidentiary hearing that she discussed with Dawson what to present at the sentencing hearing. Plea counsel testified that she thought about calling a witness to testify about Dawson being a juvenile, but both she and Dawson had concerns about that strategy. According to plea counsel, Dawson "made it very clear to me that he wanted to take responsibility. He didn't want any excuses made." Plea counsel testified that she investigated hiring an expert in neuropsychology or psychology to evaluate Dawson, to investigate mitigating factors regarding juvenile culpability that could have helped at sentencing. Plea counsel stated her strategy behind not hiring an expert was that such testimony could potentially harm Dawson by making it look "as if he were not trying to take responsibility or trying to make an excuse."

Plea counsel also testified that the two main character witnesses were Dawson's mother and his weightlifting coach. Plea counsel stated that Dawson told her he did not want his mother

12

to testify at the sentencing hearing because he was afraid of what she might say. Plea counsel testified that she talked with Dawson's weightlifting coach several times about being present to testify on Dawson's behalf at the sentencing hearing, but the coach was out of town on the day of the hearing and did not testify. Plea counsel also testified that she was planning to inform the sentencing court that Dawson had obtained his GED.

Dawson testified by deposition. He testified that the charge against him in his juvenile case was second-degree felony murder; he pleaded guilty in the "adult case" to the charge of attempted robbery in the first degree in exchange for the State agreeing not to file additional charges. He knew the range of punishment for second-degree felony murder was ten to thirty years, and the range of punishment for attempted robbery in the first degree was five to fifteen years. Dawson testified that he always planned on pleading guilty, and that sentencing was his biggest concern. He said that he told plea counsel he wanted her to call his weightlifting coach, his mother, his grandmother, and his great-aunt as character witnesses. According to Dawson, at sentencing, plea counsel told him either that "she didn't think it was a good idea or necessary" to call character witnesses. He said when the court asked him at sentencing if there was anything plea counsel had not done that he wanted her to do, he said no because he was "in shock" when the court imposed a prison sentence. Dawson testified that plea counsel had told him about the dual-jurisdiction program, but he thought that "it was just a place where they held you until you were twenty-one." He testified that when he was in juvenile custody, he "attempted suicide a couple of days after being charged with felony murder," and he told plea counsel that he thought it was important for an expert to testify about the traumatic events in his life "in order for the judge to get a full understanding." He stated that he had been diagnosed with post-traumatic stress

13

disorder, insomnia, and manic depressive disorder. Dawson testified that he was emotionally and psychologically unstable when he was making decisions in his case.

In denying Dawson's claims, the motion court considered Dawson's testimony at his plea hearing that he was satisfied with plea counsel's representation and that there was nothing more that he wanted her to do before he entered a guilty plea. The motion court also considered Dawson's testimony at his sentencing hearing that he was satisfied with plea counsel's representation and that there was nothing more that he wanted her to do in his case.[6] The motion court stated that Dr. Isaacson's testimony regarding the development of the adolescent brain "is common knowledge of a judge who presides over juvenile court cases and offenses committed by young offenders." The court noted that Dawson's SAR contained information about: Dawson's "mental health history, including his statement that he had been diagnosed with post-traumatic stress disorder, manic depression and insomnia[,] and had been on medication"; the fact of Dawson's previous attempt to commit suicide; a statement from his great-aunt that he was "a good kid, very intelligent and was hanging around the wrong people during the present offense"; and the fact that Dawson had obtained his GED prior to sentencing. The motion court noted that Dawson's weightlifting coach's opinion that he would have been willing to testify that Dawson was a "good kid" and that the crime he committed was not consistent with his character was similar to the information contained in Dawson's SAR through the statement of his great-aunt. *See Scroggins v. State*, 596 S.W.3d 163, 167-68 (Mo. App. W.D. 2020) (finding movant's claim that he was prejudiced by defense counsel's failure to more specifically argue age as a mitigating factor

---

[6] In *Jones v. State*, 541 S.W.3d 694 (Mo. App. W.D. 2018), Jones was specifically asked during his sentencing hearing following his guilty plea whether there were specific witnesses that plea counsel should have talked to, or specific evidence that plea counsel should have presented. *Id*. at 701. He answered in the negative. *Id*. at 700. We found that "[t]hese questions were sufficiently specific to permit the motion court to rely on Jones's response to refute his Rule 24.035 claim that counsel failed to investigate and call witnesses whose testimony would allegedly have impacted the length of his imposed sentence." *Id*.

in sentencing was refuted by the record, which established that the sentencing court, which was also the motion court, considered movant's age, mental development, and educational and family background as detailed in the SAR).

The motion court concluded that Dawson could have called these witnesses at the sentencing hearing; but after considering the evidence proffered at the PCR evidentiary hearing, the motion court found "that had plea counsel presented this evidence at the sentencing hearing, it would not have resulted in a lower sentence for [Dawson]." The motion court's conclusion is objectively reasonable. Likewise, where we have the benefit of having a motion court who also served as the sentencing court, the motion court's ruling as to the impact of character witnesses has been categorized by other courts as being "virtually unchallengeable." *See Cherco*, 309 S.W.3d at 831 ("[W]here, as here, the sentencing court and the motion court are one in the same, . . . a motion court's finding that character witnesses would not have ameliorated the sentence [is] virtually unchallengeable under the clearly erroneous standard.").

The motion court's finding is not clearly erroneous. Dawson has failed to establish the *Strickland* prejudice prong, and "if a movant fails to establish one prong [of the *Strickland* test], a court need not address or consider the other." *Jones*, 541 S.W.3d at 697.

Points II and III are denied.

### Conclusion

The motion court's judgment is affirmed.

/s/ *Mark D. Pfeiffer*

Mark D. Pfeiffer, Presiding Judge

Edward R. Ardini, Jr., Judge, concurs.
Alok Ahuja, Judge, concurs in a separate opinion.

15



# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

GABRIEL KNIGHT DAWSON, )
                 Appellant, )
                                  )
v.                                )   WD82441
                                  )
STATE OF MISSOURI, )  FILED: July 14, 2020
                Respondent. )

### CONCURRING OPINION

I concur in the result reached by the majority, and in its opinion – with one caveat.

The circuit court concluded that Dawson had failed to demonstrate that there was a reasonable probability that he would have received a lesser sentence if his counsel had presented mitigation witnesses, or if the sentencing court had considered a "dual jurisdiction" disposition under § 211.073, RSMo. In affirming this conclusion, the majority notes that the judge who denied Dawson's post-conviction relief motion was the same judge who sentenced Dawson in the first place. The majority quotes prior decisions of this Court which hold that, because the same judge imposed Dawson's sentence and also ruled on his post-conviction relief motion, the court's factual findings concerning prejudice "carry special weight," *Joos v. State*, 277 S.W.3d 802, 804 (Mo. App. S.D. 2009), and its denial of post-conviction relief is entitled to "[s]pecial deference," *Goodwater v. State*, 560 S.W.3d 44, 55 (Mo. App. W.D. 2018), and is "virtually unchallengeable." *Cherco v. State*, 309 S.W.3d 819, 831 (Mo. App. W.D. 2010). *See also Scroggins v. State*, 596 S.W.3d 163, 168 (Mo. App. W.D. 2020) (holding that it is "nearly impossible" on

appeal to establish prejudice from counsel's failure to present mitigating evidence, where the sentencing and post-conviction judges are the same); *McKee v. State*, 540 S.W.3d 451, 458-59 (Mo. App. W.D. 2018).

I recognize that decisions of this Court have repeatedly held that heightened deference is given to the circuit court's prejudice findings when the sentencing judge and the post-conviction judge are the same. But on further review, it is clear to me that those decisions fundamentally misconstrue the prejudice analysis mandated by *Strickland v. Washington*, 466 U.S. 668 (1984). These cases rely on the notion that the judge who actually imposed sentence on a post-conviction movant has special – indeed, unique – insight whether additional evidence or argument could have altered the sentence. These cases presume that *Strickland*'s prejudice analysis asks whether more effective representation would have swayed *the particular judge who imposed sentence* on a movant. But that is not the question the prejudice analysis is intended to answer.

*Strickland* itself makes this crystal clear. *Strickland* involved claims of ineffective assistance of counsel at sentencing, including – like here – a claim that counsel was ineffective for failing to present mitigating psychiatric testimony and character witnesses during the sentencing proceeding. 466 U.S. at 675. The Supreme Court stressed that the "prejudice prong" of the ineffective assistance of counsel inquiry is an objective inquiry, <u>not</u> a subjective inquiry concerning the decision-making process of a particular judge or jury.

> The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. ***It should not depend on the idiosyncracies of the particular decisionmaker, such as unusual propensities toward harshness or leniency***. Although these factors may actually have entered into counsel's selection of strategies and, to that limited extent, may thus affect the performance inquiry, they are irrelevant to the prejudice inquiry. Thus, evidence about the actual process of decision, if not part of the record of the

2

proceeding under review, and ***evidence about***, for example, ***a particular judge's sentencing practices, should not be considered in the prejudice determination***.

*Strickland*, 466 U.S. at 695 (emphasis added).

In *Strickland*, the Supreme Court held that testimony of the sentencing judge was "irrelevant" to the prejudice inquiry – highlighting that this is an objective, not subjective, inquiry. In the federal habeas proceeding in *Strickland*, "[t]he State of Florida, over respondent's objection, called the trial judge to testify" in the district court. 466 U.S. at 678. As explained in the Court of Appeals' decision, "[o]ver the strenuous objection of Washington's counsel, the [state-court trial] judge testified that evidence of the type contained in petitioner's fourteen affidavits and two psychiatric reports would not have altered his determination that Washington deserved the death penalty." *Washington v. Strickland*, 693 F.2d 1243, 1249 (11th Cir. 1982) (en banc) (plurality opinion), *rev'd by Strickland*, 466 U.S. 668. The Supreme Court expressly held that the state-court trial judge's testimony concerning the effect particular mitigation evidence would have had on his sentencing decision was "irrelevant":

> Our conclusions on both the prejudice and performance components of the ineffectiveness inquiry do not depend on the trial judge's testimony at the District Court hearing. We therefore need not consider the general admissibility of that testimony, although, as noted [above], ***that testimony is irrelevant to the prejudice inquiry***.

466 U.S. at 700 (emphasis added; citation omitted).

Relying on this aspect of *Strickland*, at least two recent federal appellate decisions have held that evidence concerning how individual jurors would have reacted to particular evidence is irrelevant to the prejudice inquiry, and that a post-conviction court errs by relying on such evidence. *Sealey v. Warden, Ga. Diagnostic Prison*, 954 F.3d 1338, 1358 (11th Cir. 2020) ("Although Sealey put forward the affidavit of a juror from his trial suggesting that testimony from his family [as mitigating evidence at sentencing] would have made a difference, the assessment of

3

prejudice does 'not depend on the idiosyncrasies of the particular decisionmaker.' Rather, the inquiry under *Strickland* is an objective one."; citing and quoting *Strickland*, 466 U.S. at 695); *Garner v. Lee*, 908 F.3d 845, 862-63 (2d Cir. 2018) (district court erred in assessing *Strickland* prejudice based in part on individual juror's post-trial statements to media and to investigator; "the proper focus of the inquiry is the reliability of the result, from an objective viewpoint, and not the 'unusual propensities' of particular judges or jurors"; citations omitted).

Multiple federal appellate cases have held that, under *Strickland*, it is inappropriate to gauge prejudice based on whether additional evidence or arguments would have swayed the particular judge who presided over a defendant's trial and sentencing. Those cases also hold that it is erroneous to do exactly what our cases do: give greater deference to a decision denying post-conviction relief, because the judge denying the motion was also the sentencing judge. Thus, in *Williams v. Allen*, 542 F.3d 1326 (11th Cir. 2008), the Eleventh Circuit held that a federal trial judge ruling on a habeas petition had given inappropriate weight to the fact that the same state-court judge who had sentenced the defendant to death later said that additional evidence would not have altered his decision.

> In its own assessment of prejudice, the district court focused on the fact that the same judge who sentenced Williams to death presided at the [state-court post-conviction relief] hearing. Because that judge found no reasonable likelihood that the additional evidence would have prompted him to impose a different sentence, the district court concluded that Williams could not establish prejudice. However, a trial judge's post-hoc statements concerning how additional evidence might have affected its ruling are not determinative for purposes of assessing prejudice. Indeed, in *Strickland*, the trial judge who sentenced the petitioner to death testified during federal habeas proceedings that the additional evidence would not have caused him to rule differently. The Supreme Court held that this testimony was "irrelevant to the prejudice inquiry." The Court made clear that the assessment should be based on an objective standard that presumes a reasonable decisionmaker. Applying that standard, we conclude that Williams has demonstrated sufficient prejudice to warrant relief. For

4

the reasons discussed above, we cannot say with confidence that the outcome of the sentencing phase would have been the same absent his trial counsel's errors.

*Id.* at 1344-45 (citations omitted).

Similarly, in *Saranchak v. Beard*, 616 F.3d 292 (3d Cir. 2010), the Third Circuit held that a state court had improperly conducted a *Strickland* prejudice inquiry, where the state court "highlight[ed] the fact that the [post-conviction relief] judge was also the judge" at trial, and erroneously "consider[ed] the effect the new evidence would have had on that particular judge . . . rather than considering, more abstractly, the effect the same evidence would have had on an unspecified, objective factfinder, as required by *Strickland*." *Id.* at 309. *See also White v. Ryan*, 895 F.3d 641 (9th Cir. 2018) (concluding that state court's "prejudice determination was contrary to *Strickland*" where "the court determined whether *it* would have imposed a death penalty if it had considered the mitigation evidence that McVay failed to present. However, the test for prejudice is an objective one."; citing *Strickland*, 466 U.S. at 695).

I recognize that it will be an unusual case in which we will reverse a circuit court's conclusion that there is no reasonable probability that additional mitigation evidence or argument would have affected sentencing. We owe substantial deference to such decisions both because of the discretionary nature of sentencing decisions under an indeterminate sentencing regime like Missouri's, but also because we may only reverse a circuit court decision granting or denying post-conviction relief if we find that decision to be "clearly erroneous." Rules 24.035(k), 29.15(k). But although we may owe substantial deference to circuit court decisions in this area, our level of deference should not be affected by the specific identities of the sentencing and post-conviction relief judges.

For reasons explained in the majority opinion, the circuit court did not clearly err when it concluded that there was not a reasonable probability that presentation

5

of mitigation evidence, or consideration of a "dual jurisdiction" disposition, would have resulted in a lesser sentence. I accordingly concur in affirmance of the circuit court's denial of post-conviction relief.

_____
Alok Ahuja, Judge

6